FRANK A. JARVIS, Respondent, v. ST. LOUIS, IRON
MOUNTAIN AND SOUTHERN RAILWAY COM-
PANY, Appellant.

## St. Louis Court of Appeals, May 17, 1887.

1. NUISANCE—MEASURE OF DAMAGES.—In an action of trespass on
the case for a nuisance, created by leaving the carcass of an ani-
mal insufficiently buried, on premises adjacent to those of the
plaintiff, the loss of health and comfort of the plaintiff and his
family, by reason thereof, are items of damages.

2. —— That the plaintiff might have abated the nuisance, and did
not, will not prevent his recovery, and will not, necessarily, miti-
gate his damages.

APPEAL from the Jefferson County Circuit Court,
JOHN L. THOMAS, Judge.

*Affirmed.*

GEORGE H. BENTON, for the appellant: A private
nuisance may be abated, by the party injured, when it
can be done without a breach of the peace. In this case
the private nuisance was on the plaintiff's own premises,
and not only might have been abated by him, but it was
his duty to have done so. A person should not be
allowed to recover for damages occasioned by the wrong-
ful act of another, which he could have avoided by the
exercise of reasonable prudence and care. 4 Wait's
Actions and Defences, 779 ; *Armdel v. McCulloch*, 10
Mass. 70 ; 3 Blackstone Com. 5 ; *Mayor, etc., of Col-
chester v. Brooke*, 7 Q. B. 339.; *Griffith v. McCullum*,
46 Barb. 567 ; *Irwin v. Sprigg*, 4 Gill ( Md.) 205 ; *Ved-
der v. Vedder*, 1 Denio, 262 ; Wood on Nuisance,
844.

JOS. T. TATUM, for the respondent : The defendant is

certainly liable for the trespass, the plaintiff's mere possession being sufficient. 1 Rev. Stat., sect. 2932 ; 1 Chitty on Plead., 126, 127, 176 ; *Morgan v. Cox*, 22 Mo. 373. So, also, for the aggravation, or so-called nuisance ; and sickness of family may be shown. *Ellis v. Railroad*, 63 Mo. 131 ; *Smith v. McConathy*, 11 Mo. 517.

THOMPSON, J., delivered the opinion of the court.

This action was commenced before a justice of the peace to recover damages for the injury hereinafter stated. On an appeal to the circuit court, and a trial before a jury therein, the plaintiff recovered a verdict, in the sum of seventy-five dollars, upon which judgment was entered, from which judgment the defendant prosecutes this appeal.

The statement of the plaintiff's cause of action is as follows :

"The plaintiff states that the defendant is, and was, on May 24, 1886, a corporation, organized under the laws of the state of Missouri, and operating a railway in said county of Jefferson, and Central township ; that, on or before said day, and continuously thereafter, the plaintiff had had lawful possession of a tract of land, being lot in survey 2,008, in said county and township, and on the line of the defendant's railway, and did, then and thereafter, dwell upon said tract with his wife and children ; that, on said day, the defendant having, by its engines and cars, killed a cow upon its said railway, did, then and there, by its agents and employes, unlawfully, and without the plaintiff's permission or consent, and against his remonstrance, remove the carcass of said beast, and place the same upon said land of the plaintiff, in close proximity to the dwelling of the plaintiff ; that the plaintiff did, soon thereafter, complain of said acts to the officer of the defendant, and said officer promised to have said carcass removed, but the defendant, negligently and wilfully, regardless of its duties, and the

rights of the plaintiff, did permit said carcass to remain where it was deposited, as aforesaid, upon the land of the plaintiff, and said carcass did rot and putrify, and a great stench was thereby created, which pervaded the atmosphere and permeated into and through the plaintiff's dwelling, and became an intolerable nuisance to the plaintiff and his family, and their enjoyment of their home was interfered with, and they were made sick, and suffered great annoyance and inconvenience; all to the damage of the plaintiff, in the sum of one hundred and fifty dollars, for which, with costs, he asks judgment.''

At the trial the plaintiff gave evidence tending to show, that he, with his family, occupied a house about forty or fifty yards west of the defendant's railroad track, and cultivated the farm on which the house was situated, as the tenant of the owner. His family consisted of himself, his wife, and two children. He occupied and cultivated the fields up to the fence which joined the defendant's railroad. The railroad was well fenced there, on both sides, with fences of plank and post. On the day named in the petition, the defendant's section men broke down the railroad fence and hauled upon the land, outside of the fence, being within the plaintiff's enclosure, the carcass of a cow that had been killed upon the railroad track, placing it on the edge of the plaintiff's corn field. This was at a point about two hundred and fifty or three hundred feet distant from the plaintiff's house. The carcass was deposited on the top of the ground and covered, slightly, with dirt, by the defendant's section men, the covering being not more than three inches thick. The plaintiff was present when the carcass was deposited there, and protested against their covering it with so little dirt, and insisted that they should bury it deeper. The section foreman promised to fix it so that it would not trouble him, and the plaintiff then went off to his work. The carcass created no smell for about three days, after which time

it began to smell very badly. The plaintiff went down there and saw that the dirt had been scratched off the carcass, apparently by dogs, leaving it uncovered. He tried to get the defendant's road master to have it buried again, but without success. The plaintiff would not have complained that the carcass was deposited in that particular place, if they had buried it deep enough to prevent any smell. Although the railroad fence had been taken down, and the carcass had been deposited outside the fence, yet the plaintiff testified that it was deposited at a point about twenty-seven feet from the track, which may have been within the defendant's right of way, which, according to the plaintiff's understanding, extends fifty feet on each side of its track. There was no distinct evidence in the case, as to whether the carcass was deposited upon the land occupied by the plaintiff, or upon land owned by the defendant, and the court, in instructing the jury, charged them that the point was immaterial. A witness for the defendant corroborated the plaintiff's testimony as to the manner in which the carcass had been buried. It had been put into a kind of a "slough," about a foot and a half deep, and covered with earth, but not very deep; and the witness afterwards noticed that the top of the carcass was uncovered, as though the earth had been scratched off by the dogs.

As to the effect of the nuisance, the plaintiff's evidence tended to show that it was very offensive; that, during its continuance, his wife and baby became sick; that his boy had sores upon his body, apparently the result of blood poisoning. There was no expert testimony tending to show that the sickness was produced by the offensive odors; but the plaintiff's evidence was to the effect that the members of his family were not sick, except during the continuance of the nuisance.

The court refused an instruction in the nature of a demurrer to the evidence, and, also, refused the following instruction requested by the defendant:

"If the jury believe, from the evidence in this case, that the cow in question was buried by the defendant's employes, and afterward that dogs unburied said cow, and that the nuisance did not exist till after said cow was so unburied by said dogs, and that the plaintiff knew that the said cow was so unburied, and could have covered said cow again, and thus abate said nuisance, and failed so to do, you will find a verdict for the defendant."

The court, then, of its own motion, submitted the cause to the jury upon the following instructions:

"The court instructs you that if you believe and find, from the evidence in the cause, that, in the month of May, 1886, the defendant, by its agents, ran its cars and engines against a cow, and killed it, and thereupon the defendant put said cow near the plaintiff's dwelling house, and left it in such a negligent condition that it decomposed, and thereby the surrounding atmosphere and said house were filled with stenches and unwholesome smells and odors, emitted from said cow, and that, by reason thereof, the plaintiff's wife and child were made sick, and the plaintiff and his family suffered annoyance from said smells, stenches, and odors, then you will find the issues for the plaintiff, and assess his damages at such sum as you may find, from the evidence, he has sustained by reason of such sickness of his wife and child, and such annoyance of himself and family, not exceeding one hundred and fifty dollars. It is immaterial to the plaintiff's right to recover in this case whether the cow was left on land owned by the defendant or not."

"If you believe, from the evidence in the cause, that the defendant's employes buried the cow in a careful and prudent manner, then it is not liable in this case, even though dogs may have uncovered the earth from the carcass afterwards, and offensive smells were emitted; but if said employes buried the cow in a negligent con-

dition, and did not cover it with earth as a man of ordinary care and prudence would have done, and that, afterwards, the dogs uncovered it so that the offensive smells were emitted and entered the plaintiff's house, and caused the sickness of his wife and child and annoyance to himself and family, then the defendant is liable, and you will so find."

I. The first matter, which is assigned for error is, that the plaintiff, in his petition, seeks to recover on one cause of action, and was allowed by the court's instructions to recover upon another. The argument is, that the plaintiff, by his pleading, seeks to recover damages caused by the defendant's creating a nuisance upon the plaintiff's premises, and that he is allowed to recover for a negligent burial of the carcass, placed where it was with the plaintiff's consent. We are not disposed to countenance strained objections of this kind. The *gravamen* of the action exhibited by the plaintiff's statement was a nuisance produced from the carcass of the animal. The fact that the injury is charged in the statement as having been produced by the act of depositing the carcass where it was deposited, and that it was shown by the evidence to have been produced by the negligent failure to bury it deep enough, does not, in our opinion, constitute a fatal variance, in a case where the action is commenced before a justice of the peace, and where great indulgence is extended to informality of pleading. If an objection had been made on this ground in the trial court, under the statute, it could have been obviated by an amendment; and, as we are of opinion that this is not a case where the evidence leaves the cause of action stated in the petition unproved in its entire scope and meaning, we hold that it is too late to raise this objection now.

II. Upon the trial the defendant offered to prove, by the plaintiff's witnesses on cross-examination, that the nuisance could have been abated by the plaintiff with slight difficulty and expense. This evidence was

rejected by the court, and this ruling is assigned for error in this court. The defendant's instruction, which the court refused, as above set out, was evidently framed with the view of presenting the defendant's theory of the legal effect of this evidence to the jury. No decision is cited to us, supporting the conclusion that the court committed error in these rulings. The doctrine to which the plaintiff in error appeals, first declared by Lord Ellenborough, in *Butterfield v. Forrester* (11 East, 61), when generalized, is to the effect that, where one man has created a nuisance, another man may not negligently do that which converts the nuisance into a cause of damage to him, or enhances his damages produced by the nuisance, and then recover for the damages or enhanced damages so produced. Thus, in that case, the defendant had created an obstruction in the highway; but this did not enable the plaintiff to recover damages for the hurt produced by the act of the plaintiff in carelessly and negligently casting himself upon it while driving. In many other cases of injuries to person or property, the law undoubtedly is, that the person receiving the injury can not afterwards aggravate it by his own negligence or wrong, and then recover for the enhanced damages. But no such question is presented by these rulings. The plaintiff did nothing to aggravate the damages. The contention is, that he was bound to go and abate the nuisance created by the defendant, since the law allows a private person to abate a nuisance where it can be done without committing a breach of the peace. Undoubtedly it was the plaintiff's *privilege* to abate this nuisance at his own expense; but it does not lie in the mouth of the author of the nuisance to say that he was bound to do it. The defendant created the nuisance, had distinct notice of it, received a distinct request from the plaintiff to abate it; and, having refused to do so, will not be heard to say in a contest, between it and the plaintiff, that the plaintiff can not recover because he might have abated the defendant's nuisance.

Outside of these objections, it is not argued that the action does not present a case for damages. The cases of *Ellis v. Railroad* (63 Mo. 131), and *Meyer v. Tamm* (11 Mo. App. 599), show that such injuries are actionable. That the lessee of premises subjected to such a nuisance may maintain such an action can not be questioned. *Sherman v. Fall River Iron Works Co.*, 2 Allen, 524. It is not claimed that the damages are excessive, nor could it be. *Meyer v. Tamm*, 11 Mo. App. 599.

With the concurrence of Judge Rombauer, the judgment is affirmed. Judge Lewis is absent.