CARTHAGE STONE COMPANY, Respondent, v. THE TRAVELER'S INSURANCE COMPANY, Appellant.

Springfield Court of Appeals, December 12, 1914.

1. **INSURANCE: Indemnity Insurance: Statement of Facts.** Suit on a policy of indemnity insurance against damages arising from personal injuries. Statement of case.

2. **APPEAL AND ERROR: Verdict: Binding Effect.** The finding of a jury on contested facts, under proper instructions, is binding on the appellate court.

3. **DAMAGES: Payment: Liability of Another: Duty to Minimize Damages.** It is the duty of one who has to pay damages, for which he intends to hold another liable, to mitigate and minimize the damages paid so far as can reasonably be done.

4. **INSURANCE:** Indemnity Insurance: Settlement of Claim: Rights and Liabilities. Plaintiff carried indemnity insurance. A duty devolved upon it as the insured to settle claims against it on the most advantageous and reasonable terms without losing its own rights to recover against the insurer.

5. ————: ————: Rights and Liabilities of Parties. Under contract of indemnity insurance, the refusal of the insurer to defend a case with the insured's knowledge of that fact, gives the insured a right to settle the case in good faith, keeping in view the principal that the insured should so deal with the case as to minimize, as much as possible and reasonable, the damages to be charged against the insurer.

6. ————: ————: Duty to Minimize Damages. Defendant, an indemnity insurance company, refused to defend a suit for damages against insured on the ground that no notice of the injury had been given it, but notified insured that settlement could be made for $150 and its duty to minimize the loss. Insured allowed judgment to go against it by default for $3000, the full amount claimed. The rule as to one's "duty to minimize the damages" *held* to apply. (FARRINGTON, J., dissenting.)

Appeal from Jasper County Circuit Court, Division No. Two.—*Hon. D. E. Blair,* Judge.

REVERSED AND REMANDED.

*O. C. Mossman* and *McReynolds & Halliburton* for appellant.

(1) Plaintiff is not entitled to recover because notice of the injury was not given defendant as provided by the policy. Anderson v. Frankfort Accident & Plate Glass Ins. Co., 9 Cal. App. 473, 99 Pac. 537; London Guarantee & Accident Co. v. Siwy, 35 Ind. App. 340, 66 N. E. 481; Australian Accident Ins. Co., 19 Victoria (Australia) 139; Underwood Veneer Co. v. London Guarantee, etc., Co., 100 Wis. 378, 75 N. W. 996; Nat'l. Paper Box Co. v. Aetna Ins. Co., 170 Mo. App. 370; Cooley's Briefs on Insurance, 3570; Columbia Paper Stock Co. v. Fidelity and Casualty Co., 104 Mo. App. 157; Myers v. Travelers Ins. Co., 62 Oh. St. 760, 57 N. E. 458; London Co. v. Siwy, 66 N. E. (Ind.) 481;

Underwood Veneer Co. v. London Co., 100 Wis. 378, 75 N. W. 996; Employers' Liability Assurance Corp. v. Light Co., 28 Ind. App. 473, 63 N. E. 54; Wolverton v. Fidelity & Casualty Co., 190 N. Y. 41, 16 L. R. A. 400; Smith-Dove Co. v. Insurance Co., 171 Mass. 357, 50 N. E. 516; Deer Trail Mining Co. v. Maryland Casualty Co., 36 Wash. 46, 78 Pac. 135; Crotty v. Casualty Co., 163 Mo. App. 636; Donnell Mf'g Co. v. Hart, 40 Mo. App. 512; Burgess v. Ins. Co., 114 Mo. App. 189; McFarland v. Accident Association, 124 Mo. 214.   (2)   Defendant having declined to defend the case of D. O. Perry v. Carthage Stone Company and notified plaintiff of that fact and that plaintiff must defend, it was the duty of plaintiff to make the loss as small as possible so far as it reasonably could. Fisher v. Goebel, 40 Mo. 275; Mandell v. Fidelity, etc., Ins. Co., 170 Mass. 173, 49 N. E. 110; Southern Ry. News Co. v. Fidelity, etc., Co., 83 S. W. 620; Barnett & O'Neil v. Grain Co., 153 Mo. App. 464; State, ex rel. v. Rice, 44 Mo. 436; Harrison v. Railroad, 88 Mo. App. 36; Dietrich v. Railroad, 89 Mo. App. 36; Knight Bros. v. Railroad, 122 Mo. App. 38; Vincil v. Railroad, 112 S. W. 1030.

*Bailey & Bailey* and *Howard Gray* for respondent.

(1)   Appellant contends that the policy required respondent not only to give notice of the accident, but notice of the claim for damages when it was made. No such issue was submitted by the pleadings. In appellant's answer it set up that it refused to defend the cause because no notice of the accident had been given. This was a waiver of the clause requiring notice of claim. LaForce v. Insurance Co., 43 Mo. App. 518. (2)   Failure to give notice was a matter which defendant was required to plead affirmatively and could not be raised by general denial. Hilburn v. Insurance Co., 140 Mo. App. 355; Burgess v. Insurance Co., 114 Mo.

App. 169; Hester v. Fidelity etc. Co., 69 Mo. App. 186. (3) The rule requiring a party to mitigate his damages arising from a breach of contract does not require him to deal with the party who has breached his contract, and to pay him more or to give him any advantage that he did not have under the original contract. Camfield v. Sauer et al. 189 Fed. 576; Delafield v. J. K. Armsby Co., 116 N. Y. Sup. 71.

STURGIS, J.—This suit is on a policy of indemnity insurance against damages arising from personal injuries.· Because the plaintiff and defendant could not agree as to which of them should pay $150 in settlement of a personal injury case for $4000, this court must determine which of them shall bear the burden of paying $3000, with interest and costs for the same claim.

So far as necessary to a decision of this case, the facts are these: The policy in question provides that the defendant shall indemnify the plaintiff against loss by reason of liability imposed upon it by law for damages on account of bodily injuries accidentally sustained; that it will defend in the name and on behalf of the insured any suit which may be brought at any time against it on account of such injuries, including suits that are groundless, false or fraudulent; that it will pay the costs of such suit taxed against the insured, with interest on the judgment and expenses incurred for investigations, negotiations or defense. The policy further provides that the insured shall not voluntarily assume any liability, settle any claim, or incur any expense without the consent of the company; that no action shall lie against the company to recover for any loss except for loss actually sustained and paid by the insured in money in satisfaction of a judgment after trial of the issues.

186MoApp21

While this policy was in force, one D. O. Perry was in April, 1909, injured while in plaintiff's employ and working in its mill by reason of alleged defective machinery. No suit was brought for such injury until on November 2, 1911, two and half years after the injury, although it appears that said Perry was making some claim to this plaintiff for his injury prior to that time. He then brought suit against this plaintiff for $4000, based on its negligence. On summons being served on this plaintiff, defendant in that case, it at once mailed the summons to this defendant at its Kansas City, Missouri, address. This defendant promptly replied, notifying plaintiff that it had never received any notice of Perry being injured. To this plaintiff made no reply, and, on November 17, 1911, the defendant by its attorneys again wrote this plaintiff as follows: "In the matter of the case of David O. Perry v. Carthage Stone Company, returnable to the November Term, 1911, circuit court for Jasper county, Missouri, we, as local attorneys for the Traveler's Insurance Company are instructed to notify you that the company has been waiting to hear from you as to whether or not this case was ever reported to the Traveler's Insurance Company; that they have no record of it and to date have not received any information from Mr. Logan as to whether the case was reported at the time. Pending the receipt of this information, they instruct us to advise your company and Mr. Logan on behalf of the Traveler's Insurance Company that the Traveler's Insurance Company will file through us the necessary pleadings in the case to protect against a default but that our action in so doing shall not be a recognition of liability on the part of the Insurance Company for the case, and shall be without prejudice to the rights of either party." The Mr. Logan referred to was the secretary and general manager of the plaintiff company. To this the present plaintiff, defendant in that case, made no response

and the case drifted along until January 5, 1912, when this defendant notified plaintiff that it had, as before stated, appeared by its attorneys on notice to this plaintiff that it did not admit liability by so doing and did so to prevent the case going by default until it could determine its liability to plaintiff on account of the claimed injury, and adds: ''We have been instructed by the Traveler's Insurance Company to withdraw as attorneys in that case, and to notify you that it will be necessary for you to employ attorneys to look after and defend that case, as the Traveler's Insurance Company has decided that it is not liable to you for the injuries alleged and sued for in that case. So you are hereby notified that we, as attorneys for the Traveler's Insurance Co., will not appear further in that case in the defense thereof, and that, if you desire to defend in that case you will employ attorneys to defend in your behalf.'' The attorneys for this defendant formally withdrew from the case on February 19, 1912. This plaintiff, though defendant in that action, paid no attention to the case and it drifted along. About April 5, 1912, a representative of this defendant went to Carthage, Missouri, for the purpose of further investigating the status of this damage suit, repeatedly sought an interview with Mr. Logan, the plaintiff's manager, who refused to see him but said, when called over the telephone, that he had already given all the information he had to give. In this conversation over the telephone, defendant's representative told Mr. Logan he had interviewed Mr. Perry's attorney and explained to him why his company had refused to defend the case on account of receiving no notice of the injury until after suit was brought and that Perry's attorney had told him the case could be settled for $150. This evidence as to Logan's refusal to interview this representative of defendant and what was said over the telephone was

excluded by the court, but is here in the form of a deposition.

On the return of this representative of the defendant to Kansas City, Missouri, this defendant wrote, under date of April 8, 1912, and plaintiff received the following letter: "I wish to formally advise you that the case of Perry against your company can be settled for $150. Inasmuch as the Traveler's Insurance Company have declined the defense of this case, of which fact you have heretofore been informed, I desire to say that that company by way of compromise offers to pay one-half of the suggested amount of $75, for a release and a stipulation for dismissal in the case."

"I wish also in this connection to advise you that it is your duty to mitigate the damages as much as possible, and that your claim against the Insurance Company can only be for such amount as was necessary for you to pay in settlement of the case." This letter was also excluded by the court. To this plaintiff made no reply and took no action in the defense of the case whatever. At the next term of the circuit court, on June 13, 1912, a default was taken in the case of Perry against this plaintiff, and on inquiry of damages a judgment was entered for $3000. On July 8, 1912, this default judgment was, on the application of the then defendant, plaintiff here, set aside on the ground that said Perry had agreed with this plaintiff, the Carthage Stone Company, not to prosecute the case to judgment, provided this plaintiff had to suffer the loss. The case then went over to December, 1912, and, being again reached on the docket, a default was again entered and damages assessed and judgment rendered for $3000. A vigorous attempt was thereafter made by the then defendant to again have the default judgment set aside on the ground that the plaintiff, Perry, had solemnly agreed not to take any judgment against this plaintiff and led the then de-

fendant to believe that he had dismissed said case, thereby misleading this plaintiff, the defendant there, and preventing its making a meritorious and valid defense which it swore it had thereto. The refusal of the Court to set aside this second default judgment in Perry v. Carthage Stone Company was the basis of the appeal of that case to this court; 173 Mo. App. 414, 158 S. W. 887.

The present plaintiff was thereupon compelled to pay the $3000 judgment so taken against it by default with the interest and costs, and thereupon brought this suit on the policy of indemnity insurance to recover the amount so paid. The petition alleges the terms of the policy; the injury to Perry during its life; his bringing suit and the defendant's refusal to defend same on notice; the judgment against this plaintiff and its subsequent payment. The answer sets up that no notice of the injury was given to the defendant; that Perry's injuries were the result of his own negligence and pleaded the foregoing facts as to plaintiff's neglect and refusal to either defend or settle the case on the notice given to it. The plaintiff replied by general denial which included a denial that it was not negligent in causing Perry's injury and that Perry was negligent. On the trial, plaintiff, in order to avoid the effect of the default judgment against it, assumed the burden of trying the Perry case *de novo* and proving its own negligence in causing Perry's injury and disproving Perry's negligence either as causing or contributing to his injury, using Perry as a witness for that purpose. It also admitted that its failure to defend the Perry suit was largely due to Perry's repeated promises to it that he would not collect anything off of this plaintiff which would be a loss to it.

The question of plaintiff's failure to give notice to defendant of Perry's injury was contested and resolved against the defendant by the jury. This is

binding on us and we will not say that the finding is even against the weight of the evidence, though we can say that defendant's claim on this line appears to have been in good faith and that the notice which plaintiff swore, and the jury found, was mailed to defendant at its Kansas City, Missouri, address was either lost in the mail or mislaid by some clerk and failed of its purpose in affording the defendant an opportunity to investigate the facts of the injury soon thereafter. [Nat. Paper Box Co. v. Aetna Life Ins. Co., 170 Mo. App. 361, 370, 156 S. W. 740, and cases cited.]

These matters are mentioned chiefly as bearing on the question which we think is decisive of this case, to-wit, plaintiff's failure to settle the Perry injury suit for $150, on defendant's notice and permission to do so, as defendant offered to prove, and to thus limit defendant's liability to it to that amount. Learned counsel for plaintiff does not controvert the general principle that it is the duty of one having to pay damages for which it intends to hold another liable to mitigate and minimize the damages paid so far as it can reasonable do so. They further concede that this principle is applicable to indemnity insurance contracts and the insured's duty to settle claims against it on the most advantageous terms when it can do so without losing any of its own rights to recover against the insurer. On this point both parties cite Fidelity & Casualty Co. v. Southern Ry. News Co. (Ky.), 101 S. W. 900, as follows: "Resting this defense upon the ground that the news company was obliged to minimize in every reasonable way the damage it might recover under its contract, there is no dispute about the correctness of the legal proposition that it is the duty of one whose contract rights are violated to do all reasonable within his power to mitigate the damage and lessen the amount of his loss. [Sutherland on Damages, sec. 88.] And if in the case before us the

news company had been permitted to exercise its own
judgment and discretion in the matter, and it could
have settled the loss for $2500, but without reason-
able excuse failed or refused to do so, we would have
no hesitation in holding that its recovery against the
insurance company must be limited to the sum for
which the claim against it could have been settled.''
See also this same case in 83 S. W. 620. In comment-
ing on this authority, plaintiff, in its brief, says:
''There is another reason why the rule has no applica-
tion in this case. Wherever a person under the gen-
eral rule now under consideration has paid a sum to
mitigate his damages, he has had the right to recover
that sum from the wrongdoor, but in this case appel-
lant required the respondent to release one-half of its
claim against it for damages. If the appellant had
said—the case can be settled for $150 and you may
settle for that amount and we will litigate the ques-
tion as to whether it was our duty to defend the case,
and if the issue is found against us we will agree that
the judgment may be for $150 and your costs to date,
and then respondent had refused to settle but let judg-
ment go by default for a larger sum; another ques-
tion would be presented.''

Plaintiff also concedes that although the policy
provides that no liability arises except ''for loss ac-
tually sustained and paid by him in money in satisfac-
tion of a judgment after trial of the issues,'' yet, if
the insurer refused to defend this case after notice to
it to do so, it thereby violated its contract and waived
the condition requiring a trial of the issues and that
the insured was then privileged to settle the case on
the most advantageous terms and recover from the in-
surer the amount so paid. [Butler v. American Fidel-
ity Co., 120 Minn. 157, 139 S. W. 355, 44 L. R. A. (N.
S.) 609; St. Louis Dressed Beef & Pro. Co. v. Mary-
land Casualty Co., 201 U. S. 173, 50 L. Ed. 712.] The
purport of these cases is that the refusal of the insurer

to defend a case with the insurer's knowledge of that fact gives the insured a right to make settlement of the case or to try it in good faith, having in view the principle that the insured should so deal with the case as to minimize as much as reasonable the damages to be charged against the insurer. In such case the insured should not of course be chargeable for any honest error of judgment or for any mistake made while acting in good faith. [Butler v. American Fidelity Co., supra.]

The privilege given by the insurer becomes a duty by the insured. The duty cast on the "holder" or owner of property to minimize the damages to which he intends to hold another, presupposes that such holder is without blame and exists even in favor of a wrongdoer and does not arise because or after the holder undertakes to minimize the damage and is negligent in the manner or means of doing so. It is stated in 13 Cyc. 71, that: "Where an injured party finds that a wrong has been perpetrated on him, he should use all reasonable means to arrest the loss. He cannot stand idly by and permit the loss to increase, and then hold the wrongdoer liable for the loss which he might have prevented." And, in 1 Sutherland on Damages (3 Ed.), sec. 88, that: "The law imposes upon a party injured by another's breach of contract or tort the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible." This rule applies to injuries arising either from tort or breach of contract. [13 Cyc. 72 & 75; 1 Sutherland on Damages (3 Ed.), sec. 90.]

Applying these principles to the present case, we find that this defendant declined to defend the Perry damage case and so notified this plaintiff, giving its reasons therefor based on the claimed failure of the plaintiff to give it notice of the injury promptly after its occurrence. Defendant further notified plaintiff that it would have to look after and defend that case.

After so doing, the defendant, by its letter of April 8, 1912, heretofore set out, notified this plaintiff, the defendant in the Perry case, that such case could be settled for $150. The letter then contains two distinct propositions. The defendant, as insurer, offered to pay one-half of this amount and make a complete and final settlement of the whole matter. It further notified the plaintiff in case this compromise proposition was not acceptable, that it was this plaintiff's duty to mitigate the damages as much as possible and that its claim against the defendant insurance company could only be for such amount as it was necessary for it to pay in settlement of the case, to-wit, $150. It seems plain to us that this letter and notice not only gave this plaintiff the privilege of settling this suit for $150, (its refusal to defend did that) but distinctly warned it that it was its duty to do so in order to mitigate the damages as much as possible and that its claim against the insurance company would be limited to that amount. Had this plaintiff acted on this letter and, declining the compromise feature of it, had settled the case for $150, we think no court would have hesitated a moment to have said, under the facts here shown, that the plaintiff was privileged to do so and would have denied the present defendant any defense on the ground that the plaintiff had settled the claim without its consent. It was unreasonable to say the least for plaintiff to refuse to pay $150 in settlement and without doing anything permit judgment to go by default for $3000. It is true that this defendant would have preserved its right to defend against *any* claim by plaintiff because of the claimed failure of plaintiff to give it notice of the injury promptly after its occurrence, but that is a right which we think it had a right to preserve. Had this defendant paid the $150 in settlement of the claim, as plaintiff contends it should, it would have had no right whatever to recover back or to make itself whole, however just and true might be

its claim that no notice of the injury had been given to it. All the books hold that the relinquishment of a claim or defense is a thing of value—a valuable consideration—regardless of how worthless it may prove to be at the end of a lawsuit. The final determination has no such retrospective effect. These parties were not on an equality (except as to the proposed compromise which plaintiff could rightfully decline) with reference to the payment of the amount necessary to a settlement of this case. The plaintiff could (on declining the compromise feature for each to pay one-half in full settlement) recover from the defendant the amount so paid, provided it could make good, as it afterwards did, its claim that it had given notice to defendant of this injury. The defendant by so doing would have lost its defense of nonliability and been put the amount so paid without chance to recover.

We do not say that this plaintiff might not under the circumstances here have refused to pay the $150 offered in settlement had it done so in good faith on the ground that the amount was unjust and excessive, or that it had a good and meritorious defense against *any* liability to Perry and had thereafter interposed such defense in the trial of that case. The fact that on the trial of such issues the court or jury might have found against such claim and rendered a judgment largely in excess of the offered settlement, even up to $3000, would not have necessarily prevented this plaintiff from recovering in this action the amount of such judgment with costs and expenses of defending that suit. Such action by the plaintiff might have raised a question of negligence or lack of good faith. The court in order to meet plaintiff's view as to why it had not defended the Perry damage case gave an instruction, "C", to the effect that when this defendant notified this plaintiff that it would not defend the Perry suit and that plaintiff should defend the same by its own attorneys, that it then became and was this plaintiff's

*duty to make all the defenses it honestly could* against the claim of Perry both as to his right to recover and the amount of the recovery; and that if it be found that plaintiff did not make a defense to such suit which it could have made honestly but let judgment go by default, then plaintiff is not entitled to recover in this case. The plaintiff was thereby excused from making any defense in that case because it knew it had no honest defense to make. If it knew this, why should it refuse to pay $150, which Perry offered to accept in settlement of the case, and let judgment go against it by default for $3000? In the Perry case this plaintiff, though sued for $4000 and warned by a previous judgment by default, set aside as a favor to it, as to the amount of damages the court would allow, refused to pay the $150 offer with no intention to raise any defense in that case and soon thereafter let judgment go by default for $3000 knowing that it would have to pay such judgment. By its refusal either to settle or defend, it chose to make the insurer's liability to it $3000 instead of $150.

We think the facts of this case clearly bring the plaintiff within the rule conceded by it, that a person under the general rule now under consideration should pay a sum to mitigate his damages when he has the right to recover that sum from the wrongdoer; and that this defendant did in effect say to the plaintiff that this case can be settled for $150 and you may settle for that amount and we will litigate as to whether it was our duty to defend the case and if the issue is found against us, the judgment may be for $150 and your costs to date.

The defendant offered testimony to prove that the Perry case could have been settled for $150 after defendant here had notified the plaintiff that it would not defend the case, all of which was refused. This, it is apparent from what we have above stated, was error. Defendant requested an instruction, "D",

along this line, but, as all the evidence on which it was based was excluded, the court could not give the same. If· on ·another trial defendant's evidence shows the facts as it now contends, and the same are not admitted or uncontradicted, an instruction along this line will be proper.

For the error of the court in refusing to submit testimony as to the alleged offer of settlement, it becomes necessary to reverse the judgment and remand the cause.

*Robertson, P. J.,* concurs in holding that the rule as to mitigation of damages applies in this case, and in the result. *Farrington, J.,* dissents in a separate opinion and deems the majority opinion in conflict with certain decisions of the Supreme and other appellate courts therein specified.

The cause is therefore certified to the Supreme Court.

## DISSENTING OPINION

FARRINGTON, J.—Plaintiff recovered a judgment against the defendant for three thousand dollars. The suit was based on a policy of insurance issued by the defendant by which it undertook to insure the plaintiff against loss by way of damages arising from personal injuries sustained by the latter's employees, and furthermore to take charge of any claim that was made and of the defense of any action for such injuries.

As I view the contract, it was more than a simple contract of indemnity. The provisions of the policy, pertinent here, are as follows:

"THE TRAVELERS' INSURANCE COMPANY, of Hartford, Connecticut, (Herein called ·the Company) DOES HEREBY AGREE WITH THE ASSURED named and described as such in the Declarations forming a part hereof, as respects bodily in-

juries accidentally sustained, including death at any time resulting therefrom as follows:

"INDEMNITY FOR LOSS

"I. To Indemnify the Assured against loss by reason of the liability imposed upon him by law for damages on account of such injuries.

"SERVICE

"II. To Serve the Assured upon notice of such injuries by such investigation thereof, or by such negotiation or settlement of any resulting claims as may be deemed expedient by the company.

"DEFENSE

"III. To Defend in the name and on behalf of the Assured any suits which may at any time be brought against him on account of such injuries, including suits alleging such injuries and demanding damages therefor, although such suits, allegations or demands are wholly groundless, false or fraudulent.

"EXPENSES

"IV. To pay all costs taxed against the Assured in any legal proceeding defended by the Company, all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the limits of the Company's liability as hereinafter expressed, all expenses incurred by the Company for investigation, negotiation or defense, and the expense incurred by the Assured for such immediate surgical relief as shall be imperative at the time any such injury is sustained.

. . .

"THIS AGREEMENT IS SUBJECT TO THE FOLLOWING CONDITIONS:

. . .

"NOTICE

"D. The Assured upon the occurrence of an accident, shall give immediate written notice thereof to the Company, or to its duly authorized agent, with the fullest information obtainable. He shall give like notice with full particulars of any claim on account of

such accident. If, thereafter, any suit is brought against the Assured he shall immediately forward to the Company every summons or other process served upon him. The Assured, when requested by the Company shall aid in effecting settlements, securing evidence, the attendance of witnesses and in prosecuting appeals. The Assured shall not voluntarily assume any liability, settle any claim or incur any expense except at his own cost, or interfere in any negotiation for settlement or legal proceeding without the consent of the Company previously given in writing.

"RECOVERY

"E. No action shall lie against the Company to recover for any loss under PARAGRAPH I foregoing, unless it shall be brought by the Assured for loss actually sustained and paid by him in money in satisfaction of a judgment after trial of the issue, and no such action shall lie to recover under any other agreement of the Company herein contained unless brought by the Assured himself to recover money actually expended by him. In no event shall any such action lie unless brought within ninety days after the right of action accrues as herein provided. . . ."

During the time this policy was in force an employee of the plaintiff, named Perry, was injured. Some two years after the injury occurred he brought suit against plaintiff herein for four thousand dollars. His petition, when served on the stone company, was immediately forwarded to the insurance company and it acknowledged receipt thereof but informed the stone company by letter that it had no record of ever having been notified of the injury at the time of its occurrence as required by the policy; that it would, however, file such pleas as would prevent a default judgment and in the meantime determine whether the notice was given and in that way decide whether it was liable under the policy. A motion for security for costs and a demurrer were filed by the insurance company's law-

yers. Afterwards it determined for itself that no notice was given by the assured and subsequently notified the assured that its lawyers would withdraw from the defense of the Perry damage suit. However, there is no evidence that the petition and other papers, of the suit were ever returned at this or any later time. Both the assured and the insurer did nothing and a default judgment was entered in Perry's favor for three thousand dollars. Plaintiff herein then asked that that judgment be set aside, which was done. The adjuster of the insurance company appeared on the scene in April, and although his company had long prior thereto disclaimed any liability under the policy or interest in the Perry suit, he saw Perry's lawyer and ascertained that the Perry case could be settled for one hundred and fifty dollars. The insurer made no offer to settle for that amount but still protested its nonliability. The insurance company then wrote the following letter to the assured, dated April 8, 1912, on which no action was taken by either party: (Formal parts omitted.) "Dear Sir: I wish formally to advise you that the case of Perry v. your Company can be settled for $150. Inasmuch as the Travelers' Insurance Company have declined the defense of this case, of which fact you have heretofore been informed, I desire to say that that Company by way of compromise offers to pay one-half of the suggested amount, or $75, for a release and a stipulation of dismissal of the case.

"I wish also in this connection to advise you that it is your duty to mitigate the damages as much as possible, and that your claim against the Insurance Company can only be for such amount as was necessary for you to pay in settlement of the case.

"While in your city on the 5th inst. I took this matter up with Mr. J. D. Harris, attorney for the plaintiff, and advised him as to our position.

"You may consider this proposition open for ten days.

''Awaiting your early reply, I am, . . .''

The Perry suit again came on for hearing and no defense was made, resulting, after an *ex parte* hearing, in Perry being awarded a judgment for three thousand dollars, which the plaintiff in this case was compelled to and did pay.

This suit is brought to recover from the insurance company the amount the plaintiff herein was required to pay on the Perry judgment.

The plaintiff offered in evidence the policy and the judgment and proved payment thereof, and went into the question of its liability to Perry and the amount that Perry was damaged. The jury found a verdict for three thousand dollars which went to a judgment, thus finding that plaintiff was insured, that defendant was liable, that Perry's damages were three thousand dollars, that plaintiff was liable to Perry, and that plaintiff gave written notice of the injury at the time it happened. There was evidence tending to prove each of these findings.

A number of defenses were made by the insurance company, two of which are held to be good by the majority opinion, and as it is on these points that I differ with my associates my opinion is confined to them. First, it is contended that the letter of April 8, 1912, should have been admitted in evidence to show that Perry's case could have been settled for one hundred and fifty dollars, and that plaintiff, knowing this, should have settled for that amount in order that the damages might be minimized as between it and the insurance company; and second, that the letter was the written consent to settle as was provided for in the policy. I will take up the consent proposition first.

It seems a strained construction to place on this letter to say that it is a written consent given by the insurance company to the stone company to settle with Perry for one hundred and fifty dollars. To do so requires one to read out of the letter the proposition

to compromise; in other words, it is giving the letter a construction most favorable to the one who wrote it, and that is contrary to law. However, the letter speaks for itself, and to my mind was simply an offer on the part of the insurance company to authorize a settlement for one hundred and fifty dollars provided the assured would put up one-half the amount. The most that can be said of the letter is that it gave written consent to the assured to pay out seventy-five dollars of the insurance company's money on a settlement and consent to the assured to pay out seventy-five dollars of. its own money. On what theory or by what authority the insurance company assumed to give this "consent," having long prior thereto denied all liability under the policy and long prior thereto asserted its position of "no liability," does not appear, unless, as I construe the letter (in favor of the assured), it was an offer of compromise and not a consent. Consent implies not merely that a person accedes to but authorizes an act. [8 Cyc. 585.] Suppose the stone company, acting on this letter had settled for one hundred and fifty dollars and paid one-half of the amount from its own funds; this would be as much an admission on its part that it had not given the notice as it would have been an admission on the part of the insurance company, had it paid the one hundred and fifty dollars, that it was liable and that it had received the notice at the time the jury in this case found it was received. Viewing the letter from another angle, suppose the stone company had written to the insurance company that it could settle the claim for one hundred and fifty dollars and had recognized what the majority opinion says was the stone company's duty to minimize the damage and had asked the insurance company to pay the one hundred and fifty dollars; and the insurance company had written to pay the said amount if the stone company would pay one-half of it. I think it is taking up useless time

and space to argue that in that case the assured when coming onto the insurance company for its loss would have been limited to the sum of seventy-five dollars.

In clause D of the policy under "Notice," the use of the word "consent" in the last line, in the connection in which it is used I think means that the assured is to get the written consent of the insurance company to pay out the latter's money on a claim. In other words, it is another evidence of the determination on the part of the insurance company to keep its hand in control of all proceedings after an injury occurs under the terms of the policy.

This all goes to show that the rights, obligations, duties and privileges of these parties were fixed at the time the notice was given as found by the jury. This is merely saying that the rights of the parties were fixed by the contract. And while it may be argued that the insurance company could not pay out this one hundred and fifty dollars without recognizing liability to the stone company, it can be argued with equal force that the stone company could not pay out the one hundred and fifty dollars without recognizing the fact that it had not given the required notice. I therefore do not believe that this letter made an offer or gave a consent to the assured to pay out one hundred and fifty dollars, and then, should it be determined that the notice was given that the stone company could hold the insurance company for one hundred and fifty dollars and no more.

The next proposition decided by the majority opinion is that, leaving out of consideration entirely the letter or any written consent, when the insurer disclaimed all liability and the knowledge that a settlement could be made with Perry for one hundred and fifty dollars came to the stone company, it then became the duty of the latter to settle for that amount, and, after doing so, to try the issue in another suit as to whether it gave or did not give the notice—this, be-

cause it was the duty of the assured to minimize the loss as to the insurance company.

I cannot agree to that proposition of law because I think this contract of insurance was more than one of mere indemnity. .There was not only an obligation on the insurance company to make good in money any loss sustained by the assured, but the premium was paid for the purpose of having the insurer step in and relieve the assured of the trouble and expense and burden ·of defending any lawsuit filed by an injured employee, whether it was a valid or fraudulent claim. The contractual relation of the parties established by the insurance policy was that the insurance company would be the party in interest in the defense of such suits or in the settlement of such claims. · When a suit was filed, it had agreed in consideration of the premium to step into the· stone company's shoes and to make settlement, if it chose, or to fight it out; and not only did the contract do this, but it made a provision that the insurer would not be· liable unless it be permitted to absolutely take charge of the defense or the negotiations, and denied to the assured the right to try the lawsuit brought against it or to voluntarily settle or fasten or acknowledge liability without the written consent of the insurance company.

I do not believe that the rule to minimize damage creates a duty on a party occupying the position the stone company occupies under this contract to a party occupying the position the insurance company obligated itself to fill. In other words, the insurance company was the real party in interest in the defense of Perry's suit to the extent of the policy and the assured was what might be termed the ''holder'' of the lawsuit because necessarily prosecuted against it in name.

As an illustration: An assured owes an insurer that has issued an ordinary fire policy a legal duty to preserve the property remaining after a fire and save ·as much of the salvage as he can in order to minimize the

loss; but suppose the insurer not only indemnified against loss but specially contracted that when notified of the fire it would in its own way carry out the goods and would itself minimize the loss, and that any act on the part of the assured in saving the property after the fire without the written consent of insurer would nullify the insurer's liability. Having such a contract, suppose the assured stood by the ruins with full knowledge of the fire and with full knowledge that the goods were depreciating and refused to fulfill the duty to save as much salvage as possible and walked away and left the property in that condition. In my judgment the insurer would be in no position to claim that the assured should have saved as much out of the ruins as possible and thus minimized the loss; the legal duty owed by the assured was superseded by the contract of the parties.

Section E under the "Recovery" clause of the policy, which provides that no action shall lie against the insurer to recover "for any loss . . . actually sustained and paid by him (the assured) in money in satisfaction of a judgment after trial of the issue," I think means a trial which was had in which the insurer took part, and performing its contract made a defense for the assured, which resulted in a judgment against the assured. There is no intimation in the policy that the assured will ever defend the case and pay a judgment against it in which case it was to carry on the defense.

I agree with the cases (Butler Brothers v. American Fidelity Co., 120 Minn. 157, 139 N. W. 355, 44 L. R. A. (N. S.) 609, and St. Louis Dressed Beef and Provision Co. v. Maryland Casualty Co., 201 U. S. 172, 50 L. Ed. 712) holding that where the insurance company denies all liability the assured has the privilege, if he so desires, to defend the suit or effect a settlement and then hold the insurance company, as, by the denial of liability the necessity of obtaining consent to settle is done away with. But saying that the assured has the

*privilege* of doing this is far from saying that such privilege accorded him places an *obligation* on him to do so for the benefit of the one who has contracted to assume the primary liability position. The insurance company saw fit to withdraw from the defense of Perry's action. It was then the *privilege* of the stone company to go on and defend, but it certainly had no *duty* to do anything; and especially is this true since it was prohibited from compromising with Perry without the written consent of the insurance company.

There is a materially different relation existing in this case than that presented in the cases of Southern Ry. News Co. v. Fidelity & Casualty Co. of New York (Ky.), 83 S. W. 620, and Fidelity & Casualty Co. of New York v. Southern Ry. News Co. (Ky.), 101 S. W. 900, where it was held that if the insurer does not itself conduct the defense of the action of the insured person against the assured, the latter is bound to make the loss as small as it reasonably can. I will admit that the assured can, if the insurer refuse to do anything, proceed with the cause and defend or settle, and, if he acts in good faith, require the insurer to make him whole to the extent of the policy; and if he so elects to either settle or fight the action on the merits, and does so, then he *must* act in good faith in either making a settlement or making a defense as ordinary prudence and good sense demands; his duty to do this, however, does not begin until he exercises such privilege, and by holding him to a duty to do so after he does exercise such privilege does not in my judgment argue that it was his duty to defend or settle—that is under a policy which is not merely one of indemnity against loss, but under a policy whereby the insurer has contracted that it will, in order to fix liability, be permitted to carry on the litigation in the name of the assured. And when the Kentucky court laid down the rule that the assured must minimize the loss as against the insurer, it was dealing with a case where the as-

sured had elected to act when the insurer had refused. In other words, one may be required to do certain things or be required to conform to a certain standard of action where he voluntarily assumes authority or undertakes to do something, whereas had he done nothing, no liability or obligation would ever have arisen. One may, by affirmative action and assumption of authority, be required to exercise certain duties when the same things would not have been required of him by mere nonaction.

The determining question in this case under the policy seems to me to be: Who was the real party in interest in the defense of Perry's damage suit? I think the policy fixed that relation upon the insurance company, and that, whether Perry's claim was bona fide or fraudulent; and the liability of the insurance company became fastened upon it and it occupied the position of the real party in interest the instant the assured gave the notice that an injury had been suffered by one of its employees. The jury has found, and we must take it as an established fact in dealing with this appeal, that the insurer received the notice; having received it, the defense of the case in court was then up to the insurer, and it was only the duty of the assured to aid, and to furnish the suit papers, and all information it was called upon to furnish. Every clause in the policy determines that the insurer occupied the relation of the real party in interest and became the primary party so far as that lawsuit was concerned, whether the claim was valid or fraudulent. As between the assured and Perry of course the relationship remained the same. Even in simple contracts of indemnity, in equity the insurer has been held as the real party in interest and the one primarily liable as the principal debtor to the injured party. [Beacon Lamp Co. v. Travellers' Ins. Co. (N. J.), 47 Atl. 579.]

In this case not only did the insurance company contract to undertake the defense but it did in fact file

a pleading in defense of the Perry damage suit. It is true that in its letters written before filing the pleading it was denying that it had received notice and stated that it would file such pleas as would prevent a default, reserving the right *only* of ascertaining whether the required notice had been given. To begin with, I do not think the insurance company should be permitted in one breath to say, ''We are going into this law suit to defend'' and in the next, ''We are not going in to defend.'' It will be held by its contract to defend, but more so by its actual participation in the proceedings. Its acts should certainly speak louder than a mere form of words in a letter. The only denial of liability at that time was based on the proposition that no notice of the injury had been given, and it seems to me that the stone company's action against the insurance company should stand or fall on the question of the giving of the notice. If the insurer did get notice, it was liable for the amount of the judgment recovered by Perry. It had its day in court on that question. Besides, having taken the steps it did I do not think it should be permitted to withdraw, denying liability on account of not receiving notice, and then refuse to pay, not because the stone company did something wrongful or negligent, but because it did nothing.

It seems to me that the relation existing between the stone company and the insurance company is somewhat similar to that existing between an assignor and an assignee of a chose in action. The common-law implied obligation of the assignor is that he will not interfere with the chose after the assignment, and if he does interfere and does so to the damage of the assignee this renders him liable for any damages resulting from such interference. The assignee is the real party in interest and at common law must have brought the suit in the name of the assignor. There was no duty, as I understand, resting on the assignor to do anything other than to fulfill his express and implied

obligations neither of which was that he would undertake to settle with the debtor or litigate the question with the debtor. If he does undertake it and interferes to the damage of the assignee he can be held for any damage resulting therefrom. But this is far from saying that noninterference or nonaction will cast a liability on him or duty on him to minimize the damage.

I have not gone into the facts of this case and undertaken to discuss the merits of the question whether the notice was given or whether the action of the assured was evidence that the notice was or was not given or whether there was collusion between Perry and the stone company. I take it that on this appeal we must consider it as established that the notice was given immediately after the injury occurred as testified by the stone company's witnesses and believed to be the fact by the jury trying that issue. But I view the case on these salient facts: The insurance company insured the stone company against loss, and was, in case notice of an injury was given in accordance with the terms of the policy, bound to defend the damage suit if one followed and to assume the stone company's burden in case liability was made out; that is, the insurance company was to carry the load to the extent of its policy. The injury occurred and the notice was given. The amount of the damage was established not only in the case of Perry v. Carthage Stone Company but was established again after a trial of the issue by the jury in this case at three thousand dollars. The insurance company did begin and undertake actually to defend that suit, and then, relying on the issue of fact only that no notice was given, withdrew from the defense. The assured according to the terms of the contract was merely to *aid* in the litigation, not to carry it on. It did nothing. The facts were as well known to the insurer as to the assured. The insurer was in equally as good position to make the one hundred and fifty dollar settlement as was the assured.

It was the insurance company's lawsuit primarily because it was the real party in interest in the defense—made so by its own contract for a consideration—and it should be estopped from setting up a failure to act on the part of the assured when it failed to act for its own protection.

The letter of April 8, 1912, was no consent to settle for any more than seventy-five dollars—certainly no written consent upon which it could be held for more than seventy-five dollars; and it is not claimed that Perry or his attorney ever offered to settle for that amount. Consent to do a thing must be unqualified and unconditional.

The construction placed upon the letter of April 8, 1912, in the majority opinion is most favorable to the writer, and it is therefore in conflict with many decisions holding that where a writing is uncertain or ambiguous it must be given a construction most strongly against the writer. [Rochester Mining Co. v. Maryland Casualty Co., 143 Mo. App. l. c. 561, 128 S. W. 204; Long Brothers Grocery Co. v. United States Fid. & Guar. Co., 130 Mo. App. l. c. 429, 110 S. W. 29; and McManus v. Gregory, 16 Mo. App. 375.] In this case we need look no further than the answer of the defendant where it puts its own construction on the language of the letter, as follows: "That this defendant as a matter of compromise and adjustment *solely*, and to get rid of any further trouble in regard to said case agreed to pay seventy-five dollars of said one hundred and fifty dollars so offered to be taken by the said Perry."

The duty to mitigate damages on a breach of contract is ordinarily an implied duty raised by the law. I think such duty can be by express contract placed upon either party to the transaction and consequently either party may be by express contract relieved of the duty; that is, the party seeking to invoke such duty can by express contract be estopped from insisting on

it when he has agreed that the other party has been relieved; and this is certainly true where the party on whom it is claimed the duty rests would by his act tending to mitigate the other party's loss place himself in a worse position or be required to relinquish rights that he had under the contract for which rights he had parted with a valuable consideration. The following language was used in the case of Howard v. Vaughn-Monnig Shoe Co., 82 Mo. App. l. c. 410-411: "Ordinarily, one hired for a definite time and wrongfully discharged prior to that time, should accept an offer to do similar work and his earnings will mitigate the damage. But where the offer of opportunity to so work is made by the wrongdoer in such way, or under such circumstances that its acceptance would force an abandonment of his rights under his contract of employment, he is under no obligation to accept." A privilege to mitigate damages does not necessarily raise a duty to do so. It is not claimed that plaintiff did anything to aggravate the damages. Defendant complains on account of plaintiff's nonaction, and in sustaining this defense the majority opinion is in conflict with the case of Jarvis v. Railway Co., 26 Mo. App. 253. There are many cases, such as Hurst v. Railroad, 117 Mo. App. 25, 94 S. W. 794, where there is no duty to mitigate damages; and I think the facts of this case bring it within the rule announced in the case last cited.

I therefore hold that the trial court committed no error and that the judgment should be affirmed, and further hold that the decision of the majority is in conflict with the following cases: Jarvis v. Railway Co., 26 Mo. App. 253; Hurst v. Railroad, 117 Mo. App. 25, 94 S. W. 794; Howard v. Vaughn-Monnig Shoe Co., 82 Mo. App. 405; McManus v. Gregory, 16 Mo. App. 375; Long Brothers Grocery Co. v. United States Fid. & Guaranty Co., 130 Mo. App. 421, 110 S. W. 29; and Rochester Mining Co. v. Maryland Casualty Co., 143

Mo. App. 555, 128 S. W. 204. For this reason I ask that the cause be certified to the Supreme Court for final determination.