NEW YORK LIFE INSURANCE COMPANY *v.* ASHBY.

4-5756                                            138 S. W. 2d 65

Opinion delivered January 29, 1940.

*Louis H. Cooke, Maddox & Greer* and *Rose, Lough-borough, Dobyns & House,* for appellant.

*J. G. Waskom,* for appellee.

GRIFFIN SMITH, C. J. The appeal is from a judgment for $2,547.40 rendered on a jury's verdict finding that appellant was delinquent under a policy of life and disability insurance issued September 25, 1924.[1] Payments were to be made if the insured should become wholly disabled by bodily injury or disease ". . . so that he is prevented thereby from engaging in any occupation whatever for remuneration or profit."

In January, 1926, appellee was accidentally shot by a hunting companion. He alleges that as a result of the injuries he cannot control his left arm and left leg, and that feeling is gone from his right side. When the accident occurred appellee was 37 years of age. His part-time occupation was that of an automobile mechanic. He was also a timber foreman and cruiser. In the latter employment he received $40 per week.

At the time of his injury appellee was employed by a stave company. His duties required "cruising" in the timbered area along the St. Francis river to see that plenty of logs were ready for the mill. There were incidental activities, such as looking after motor boats, etc.

Shortly after the accident appellee made proof of disability. Appellant accepted the proof and began making payments. These continued until December 1, 1926, at which time appellant, having been informed that the insured had returned to work, discontinued the remittances.

Appellee testified that at the time payments were terminated he was assisting his foreman; that he made a few trips, but could not do the work, and was laid off. He was thus employed at $40 per week for "four or five or six weeks."

---

[1] The principal judgment was for $1,770, representing fifty-nine monthly installments of $30 each. The suit was for payments alleged to have been due within five years from the time the complaint was filed. No claim was made for the preceding seven years, the theory being that such demands were barred by limitation. Interest on each of the fifty-nine installments was computed to date of judgment, amounting to $256. An attorney's fee of $300 was allowed, together with statutory damages of 12 per cent. Pope's Digest, § 7670.

Appellee says that after payments were discontinued he wrote the company, but it was "quite a while" before this was done—"possibly," or "perhaps," or "about" 1927. It is in evidence that appellee's mother wrote appellant January 25, 1927, insisting that her son was totally and permanently disabled. Appellant's testimony was that (other than the letter from appellee's mother) there were no communications from appellee for many years. The company's notification to the insured that payments were being discontinued was dated January 7, 1927.

In 1927 or 1928 appellee consulted a lawyer to determine whether he was entitled to further payments. Presumably the advice was adverse, for appellee says: "I did not have much of an idea that I had a cause of action."

Following the accident appellee received hospitalization for thirty days, then during a period of sixty days made trips to the clinic for treatment. There is this testimony by appellee: "I went to work for the stave company about four months after I got out of the clinic, but I stayed on that job only a few weeks. [The stave company] put me back to work at my old salary of $40 a week."

After unsuccessfully attempting other forms of work, appellee, in 1930, was employed by Burton Motor Company and has been so engaged since. His duties are to collect accounts and sell used cars. Beginning with 1936 his salary was increased to $20 per week.

Errors alleged are (a) that suit was barred by limitation[2]; (b) that the policy had lapsed, and (c) that appellee's disability did not prevent him from engaging in ". . . any occupation whatever for remuneration or profit."

The policy provides for a waiver of ". . . any premium falling due after approval [of proof that the insured is totally and permanently disabled] and during such disability."

Quarterly premiums due June 25, 1926, and September 25, 1926, were waived. The last remittance made to

_____
[2] Pope's Digest, § 8933.

appellee was December 1, 1926. It is appellant's contention that the policy lapsed for non-payment of the quarterly premium due December 25, 1926. There was a grace period of thirty days.

The facts clearly disclose that appellee was injured and has not recovered. It is insisted by the insured that the case comes within the rule frequently announced by this court that even though a claimant is able to do some work and engage in general business or professional activities, a judgment for compensation will be sustained if the injury or illness prevents the insured ". . . from performing all of the substantial and material duties connected with his business or avocation."

In *Missouri State Life Insurance Company* v. *Snow*, 185 Ark. 335, 47 S. W. 2d 600, the insured was entitled to compensation if disability from sickness or injury prevented him ". . . at all times thereafter from engaging in any gainful occupation."

In disposing of the case on appeal this court said:

"There can be no question that [Snow] is partially disabled, that he has a stiff hip which seriously impairs its usefulness, that he cannot stand or walk as he once could, but it does not follow from this that his disability is covered by the policies. The total and permanent disability therein defined 'must be such as to prevent the insured from engaging in any gainful occupation'. This is the hazard insured against under this clause and against no other, except that certain injuries specified 'shall be considered total and permanent disability within the meaning of this provision,' none of which were suffered by appellee."

It was then said: "By his own testimony appellee is shown to be performing the material and substantial duties of a gainful occupation."

We are not unmindful of other decisions which appear to be in conflict with the Snow Case[3], but which are

[3] *The Lincoln National Life Insurance Co.* v. *Cook*, 194 Ark. 794, 109 S. W. 2d 679; *Pacific Mutual Life Insurance Co.* v. *Dupins*, 188 Ark. 450, 66 S. W. 2d 284; *Missouri State Life Insurance Company* v. *Silvester Foster*, 188 Ark. 1116, 69 S. W. 2d 869; *Missouri State Life Insurance Co.* v. *Fodrea*, 185 Ark. 155, 46 S. W. 2d 638; *Missouri State Life Insurance Co.* v. *Withers*, 188 Ark. 1130, 69 S. W. 2d 872.

distinguishable. Each has been decided upon the particular facts in issue—facts the court thought controlling.

An earlier decision is that of *Industrial Mutual Indemnity Company* v. *Hawkins,* 94, Ark. 417, 127 S. W. 458. It was there held that under a policy obligating the insurer to make certain weekly payments if the insured should be wholly disabled and prevented ". . . from the prosecution of any and every kind of business for a period of not less than one week," the insured was entitled to receive indemnity when he was so injured as to be ". . . wholly prevented from prosecuting any business in which he is capable of engaging." The case was extensively annotated. 29 L. R. A., N. S., 635, 21 Ann. Cas. 1029.

In the Hawkins Case, *supra,* Mr. Justice Frauenthal, speaking for the court, quoted from *McMahon* v. *Supreme Council,* 54 Mo. App. 468. In that case the policy the court was called upon to construe provided payment when the insured was ". . . totally and permanently disabled from following his usual occupation." The Missouri court held that total disability would occur when he the claimant was prevented from following an occupation whereby he could obtain a livelihood; that in determining whether such disability existed in a given case both the mental and physical capabilities of the insured should be considered. There is this comment by Judge Frauenthal: "Provisions in all insurance policies should be construed most favorably toward those against whom they are meant to operate; and they should be interpreted so as to carry out the plain purpose of the agreement. That construction should be given to the language which would not make it inoperative from its very inception, but which would, if at all consistent with the words employed, make an effective undertaking."

Applying this rule to the instant case, we have a situation wherein the insurer acknowledged the insured's disability and gave full force to effect of the injury during the period the insured himself recognized it. Following hospitalization and subsequent medical treatment appellee returned to work for the stave company

by which he was employed prior to the accident, and his salary was the same he had formerly commanded. By the election to work for $40 per week rather than remain idle or partially employed in a different profession or business, he constructively informed the insurer that his disability was at an end. It appears he was mistaken; yet, without in a timely manner urging the mistake in mitigation, and without pursuing to a legal conclusion the rights he now says he then had, appellee sought and found other employment in different fields. By 1936 he had achieved sufficient proficiency to earn approximately $85 per month. He became a competent automobile salesman and won distinction in the "fifty club."

Are we to say that his injuries prevent him ". . . from engaging in any occupation whatever for remuneration or profit?"

Admitted facts answer the query.

Since the policy does not cover partial disability, the judgment must be reversed and the cause dismissed. It is so ordered.

MEHAFFY and HUMPHREYS, JJ., dissent.