PACIFIC MUTUAL LIFE INSURANCE COMPANY *v.* RIFFEL.

4-6262                                                    149 S. W. 2d 57

Opinion delivered March 31, 1941.

*John M. Lofton, Jr.,* and *Owens, Ehrman & Mc-Haney,* for appellant.

*Coleman & Riddick, Martin K. Fulk* and *Shields M. Goodwin,* for appellee.

GRIFFIN SMITH, C. J.  The jury found that the plaintiff (appellee here) had been totally disabled within the meaning of a policy of insurance for the period in question,[1] and the court rendered judgment.  Appellant insists (1) it should have had a directed verdict, (2) that the jury was erroneously instructed, (3) that conduct of opposing counsel was prejudicial, and (4) that improper argument was permitted.

*First.*—The policy does not compensate partial disability.  Appellee, an attorney, testified he had been unable to perform the material duties of his profession.  The illness for which compensation is due must result in continuous, necessary, and total loss of all business time.  Appellee is not bedridden; but, according to the testi-

[1] Appellee's insurance contract was originally with Pacific Mutual Life Insurance Company.  A California court adjudged the company insolvent in 1936; whereupon its business was reinsured by appellant.  The policy issued appellee by Pacific Mutual provided compensation of $400 per month for total disability.  Appellant's reinsurance contract assumed 35 per cent. of Pacific Mutual's obligation as to that class of policies carried by appellee, or $140 per month.  Insurance ceased at age 60.  Appellee's total disability prior to attainment of his sixtieth year was for ten months.  The policy provided that no payments were due during the first three months.  Therefore, the amount in controversy was $140 for seven months, or $980, plus penalty and attorneys' fee.

mony of Dr. Dibrell, exercise had been prescribed as an aid to circulation.

Dr. Dibrell examined appellee in 1935. The diagnosis showed acute infectious arthritis. The condition often results in fixation of the joints—that is, permanent stiffness.

January 9, 1939, and April 1, 1940, Dr. Dibrell examined appellee and found him still suffering from arthritis of a hypertrophic type. It involves a wearing away of cartilage at joints, permitting the bones to come together. As expressed by the doctor, "There is then an atrophy of the bone itself, and this is a progressive thing. We have no means to stay the course of it, no cure. The condition is permanent."

The doctor was asked whether, in his opinion, appellee's condition produced constant pain. He answered that it would not, adding: "If he rests, and does not take any sustained exercise he will be very comfortable throughout his life; but if he exerts himself he will have pain that will probably put him to bed."

There was the explanation that a certain amount of exercise is stimulative and conducive to comfort, but that the patient was incapable of sustained effort.

This question was asked: "State whether, in your opinion, [Mr. Riffel] has, since March 23, 1939, been unable to perform any duties of an occupation which would require constant exercise or extended effort." The answer was: "Physically, yes."

There is other testimony which in evidential value was subsidiary to that given by Dr. Dibrell; enough, we think, to have justified submission of the controverted question of disability.

In *The Mutual Life Insurance Company of New York* v. *Phillips, ante,* p. 30, the disability for which payment would be made must have been such as to continuously render it *impossible*[2] for the insured to follow a gainful occupation. In construing the word "impossible" it was said: "If the disease it is claimed causes disability

---

[2] Italics supplied.

(although not compelling inactivity) is such that slight effort might reasonably be expected to result disastrously, the insured would not be required to take the risk, although admittedly to do so would not be impossible.''

In the case at bar reliable medical testimony is that appellee should not engage in sustained effort. In fact, the only effort Dr. Dibrell thought would not be seriously injurious was that prescribed in aid of circulation.

Appellants ground their hope for reversal on the principles defined in *Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A., U. S. 635, 21 Ann. Cas. 1027; *Missouri State Life Insurance Co.* v. *Snow,* 185 Ark. 335, 47 S. W. 2d 600; *Ætna Life Insurance Co.* v. *Person,* 188 Ark. 864, 67 S. W. 2d 1007; *Lyle* v. *Reliance Life Insurance Co.,* 197 Ark. 737, 124 S. W. 2d 958; *Metropolitan Life Insurance Co.* v. *Guinn,* 199 Ark. 994, 136 S. W. 2d 681; *New York Life Insurance Co.* v. *Ashby,* 199 Ark. 881, 138 S. W. 2d 65; *National Life & Accident Insurance Co.* v. *Merritt,* 200 Ark. 158, 138 S. W. 2d 79.

In the Ashby Case it was said: ''We are not unmindful of other decisions which appear to be in conflict with the Snow Case, but which are distinguishable. Each has been decided upon the particular facts in issue— facts the court thought controlling.''

So, here, the controlling consideration is one of fact: —was there substantial testimony to support the jury's finding that the disease suffered by appellee resulted in continuous, necessary, and total loss of all business time ''business time'' meaning ability to engage in sustained effort of a character sufficiently substantial to negative the idea that there was not a total loss of power reasonably to continue the business or profession. In view of Dr. Dibrell's diagnosis and his prognosis, we think the answer is that there was substantial testimony to sustain the verdict.

*Second.*—Instruction No. 3 told the jury the plaintiff was entitled to recover if by reason of disease he had been, during the period alleged, unable to perform in the usual and customary manner all of the material

duties of his profession. The specific objection was that the instruction permitted recovery in the event the jury should find that the plaintiff could not perform any slight duty in connection with the practice of law. It is insisted that use of the word "all" was improper.

The instruction has been approved many times. One who is unable to perform the material and substantial duties of his or her profession, and who because of illness or injury cannot engage in remunerative work, is incapacitated. The word "all" as used in the instruction must be read in connection with "material." If the duty or activity which because of illness or injury cannot be performed or engaged in is "material" to the insured's business, profession, or vocation, the theory is that without such attention or application the business, profession, or vocation, will suffer to such an extent as to become non-remunerative, or virtually so. The terms in policies compensating if total disability is caused by accident or ill health are not ordinarily intended to apply if the insured is not wholly prevented from performing, in the usual and customary manner, all of the material duties incident to the objective. While an instruction that the policy did not cover partial disability would have been proper, failure to so inform the jury was not, in the circumstances of this case, prejudicial.

*Third.*—On cross-examination a witness for appellee was asked if he knew "the [Pacific Mutual Life Insurance Company of California] 'bursted' right in the face of policyholders." It was objected that the question was intended to prejudice the jury, since insolvency of the company was not involved and assumption of its contracts by appellant on a 35 per cent. basis was admitted. The court overruled defendant's motion for a mistrial. It is true, of course, that the question was immaterial. It bore no relation to the fact of illness, or to the extent of disability; but it is also true the company did become insolvent and that the insured continued to pay an annual premium of $120 for slightly more than a third of the protection he had contracted for. The general subject of insolvency was introduced by counsel for appellant. Numerous questions were asked

concerning appellee's adjudication as a bankrupt. As Chief Justice McCulloch said in *St. Louis, Iron Mountain & Southern Railway Co.* v. *Osborne,*[3] "if error was committed, it was invited."

*Fourth.*—Walter G. Riddick of counsel for appellee read to the jury Instruction No. 3, and in commenting upon it said: "It tells you that if the plaintiff cannot perform, in the usual and customary manner, all of the material duties of his profession—an attorney—he is entitled to recover. [Counsel for the defendant] has conceded that [the plaintiff] cannot try jury cases, and the plaintiff is therefore disabled under the language of this instruction."

When objection was made, the court told the jury to take the instruction as worded. The court was correct. The instruction, as distinguished from counsel's construction of it, was the jury's guide.

No record was made of argument of counsel on either side. The matter excepted to was brought up through bystanders' bill of exceptions. There is no method of ascertaining whether the argument was modified or explained by other comments. In *Metropolitan Life Insurance Co.* v. *Banion,* 106 Fed. 2d 561, the appellant contended certain parts of an argument by opposing counsel were prejudicial in that they were calculated to excite prejudice. The court agreed that the castigation "went too far," and that it could not be sanctioned in point of propriety. Nevertheless, the judgment was affirmed. The court said:

"Furthermore, no record was made of the argument of counsel for the company, and it, therefore, is impossible to know whether the argument in question was provoked by argument of opposing counsel. Ordinarily a judgment will not be reversed on the ground of improper argument where all arguments are not in the record so that it can be determined whether the parts drawn in question were provoked or made in response."

While in the instant case it seems clear from the matter reproduced that reading and commenting on the

---

[3] 95 Ark. 310, 129 S. W. 537.

instruction was not provoked, yet without the entire record of argument we cannot say the objectionable statement was not otherwise explained or qualified.

Affirmed.