THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES v. BRUCE.

4-6547                                    157 S. W. 2d 522

Opinion delivered January 12, 1942.

*Kaneaster Hodges, Alexander & Green* and *Rose, Loughborough, Dobyns & House,* for appellant.

*Pickens & Pickens,* for appellee.

HUMPHREYS, J. This suit was brought by appellee in the circuit court of Jackson county against appellant to recover total and permanent disability benefits under the total and permanent disability clause contained in a policy of insurance in the face amount of $10,000, issued by it to him in 1930 for the consideration of a yearly premium to be paid by him in the sum of $436.90, which premium included $31.40 for total and permanent disability benefits, alleging that while the policy was alive and in full force and effect appellee became totally and presumably permanently disabled on April 1, 1940, by reason of angina pectoris and that appellant had failed and refused to pay him $100 per month from the first day of May, and had compelled him to pay the annual premium of $436.90 on the dates same became due all being in violation of the provisions of said policy.

The prayer of the complaint was for judgment in the sum of $100 per month from the first day of May, 1940, and for the sum of $436.90 paid as annual premium, with interest from the date of said payment, for penalty and attorney's fees and all other proper relief.

Appellant filed an answer denying that on April 1, 1940, appellee became totally and presumably permanently disabled; that it had refused to comply with the provisions of the policy; that appellee is entitled to recover the sum of $100 per month from May 1, 1940, and $436.90 paid as an annual premium on the policy; and that appellees is entitled to recover the statutory penalty and attorney's fee.

On the 5th day of February, 1941, the cause was submitted to a jury upon the sole issue of whether, under the evidence introduced by the respective parties, appellee became totally and permanently disabled within the meaning of the disability clause contained in the policy, it being stipulated by counsel that in case the jury should return a verdict that appellee was totally and permanently disabled he would be entitled to recover the

monthly benefits from May 1, 1940, and that the court might fix the amount of recovery. This stipulation was agreed upon during the course of the trial and put in the record.

Pursuant to the stipulation the court told the jury in instruction No. 3 that it was only called upon to give a "yes" or "no" answer to the question as to whether appellee was totally disabled.

In submitting that issue to the jury the court gave instruction No. 4 to the jury to guide it in determining whether appellee was totally and presumably permanently disabled under the disability clause in the policy, which is as follows: "You are instructed that to recover on the disability clause in the policy, the plaintiff (appellee) Bruce need not be absolutely helpless. He would be considered totally disabled if you believe from a preponderance of the evidence that he is so disabled that it renders him unable to perform the substantial and material acts of his business or occupation in his usual or customary way. And, if you believe, gentlemen, from a preponderance of the testimony that the plaintiff Bruce (appellee) is so disabled from this heart ailment, as he alleges, that it renders him unable to perform substantial and material acts of his business and occupation in his usual and customary way, it would be your duty to find for the plaintiff (appellee); and, unless you so believe it would be your duty to find for the defendant (appellant)."

Appellant objected to the giving of the instruction and excepted and asked that his exceptions be noted of record, which was accordingly done. The clause in the policy defining the term "total disability" as used therein is as follows:

"Disability is total when it prevents the insured from engaging in any occupation or performing any work for compensation of financial value."

This identical clause was involved in the case of The Equitable Life Assurance Society v. Barton, 192 Ark. 984, 96 S. W. 2d 480, and this court placed the following construction thereon, (quoting syllabus No. 3): "To be

totally disabled within the meaning of an insurance policy insuring against such condition, it is not necessary that the insured should be absolutely helpless; he is totally disabled when he is unable to perform the substantial and material acts of his business or occupation in the usual and customary way."

It will be observed by reference to instruction No. 4, given and quoted above, that the court followed the interpretation placed upon the identical clause in the case of *The Equitable Life Assurance Society* v. *Barton, supra.*

The last expression of this court in construing a similar clause to the one in the policy in the instant case is found in the case of *Pacific Mutual Life Ins. Co.* v. *Riffel,* 202 Ark. 94, 149 S. W. 2d 57, as follows: "So, here, the controlling consideration is one of fact:—was there substantial testimony to support the jury's finding that the disease suffered by appellee resulted in continuous, necessary, and total loss of all business time, 'business time' meaning ability to engage in sustained effort of a character sufficiently substantial to negative the idea that there was not a total loss of power reasonably to continue the business or profession. In view of Dr. Dibrell's diagnosis and his prognosis, we think the answer is that there was substantial testimony to sustain the verdict."

In that case the court upheld an instruction similar to instruction No. 4 given in the instant case. Instruction No. 4, was, therefore, a correct declaration of law applicable to the facts in the instant case.

On the 5th day of February, 1941, the cause was submitted to a jury upon the sole issue of whether, under the evidence introduced by the respective parties, appellee became totally and permanently disabled within the meaning of the disability clause contained in the policy, it being stipulated by counsel that in case the jury should return a verdict that appellee was permanently and totally disabled he would be entitled to recover the monthly benefits from May 1, 1940, and that the court might thereafter fix the amount of recovery. This stipulation was agreed to when all the evidence in the case

had been introduced in order that the jury might not be bothered with fixing the commencement date of the monthly payment for disability.

Pursuant to the stipulation the court told the jury in instruction No. 3 that it was only called upon to give a "yes" or "no" answer to the question as to whether appellee was totally disabled.

The jury answered the question "yes" that appellee was totally disabled. The verdict was returned on February 5, 1941, and on February 24, 1941, the court took up the question as to the amount of judgment to be rendered after hearing evidence that the last installment of the annual premium was mailed by appellee to appellant at its Little Rock office on the night of February 5, 1941, which was after the verdict had been rendered. The court then rendered a judgment in the amount of $100 per month from the first day of May, 1940, with interest at six per cent; and for the sum of $462.80 for premiums which had been paid during the disability period; a penalty of $156 for not paying same and the sum of $400 for attorney's fee, from which verdict of the jury and judgment of the court fixing the amount of recovery an appeal has been duly prosecuted to this court.

The first question raised on this appeal is that there is no substantial evidence to support the verdict of the jury finding that appellee was totally and permanently disabled. Without setting out the testimony our conclusion is, after a careful reading thereof, that there is substantial evidence in record supporting the verdict. Appellee had been since 1936 a large operator in both rice production and dry farming. He rented land upon which to farm, some 700 acres from one party and about 200 acres from others and in the latter part of 1939, he bought a 220 acre farm upon which he made a payment and moved from Wheatley onto same and made some repairs on the house. After pitching the crops himself, as well as employing a number of hands to assist, he became incapacitated about April 1, 1940, so that he could not work as he had worked before and could not supervise his farming interests as he had done before.

He was examined by Dr. C. R. Gray, who owned the hospital at Newport, and his diagnosis revealed that he had angina pectoris. This physician directed him to go to bed and do no work of any kind, which directions he complied with for a considerable length of time. On August 3, 1940, being a veteran, he was admitted to the Veterans' Hospital on his complaints of pain over his heart and in his left arm, where he remained for about three weeks, at which time he was discharged because they found nothing organically wrong with him. He was advised by the physicians at the hospital to take some morphine tablets which they furnished him and advised to go to bed and thereafter he remained in bed about fifteen hours each day until the rice threshing began the latter part of November and continued into December for about two weeks. During the time he had been resting after he was first examined by Dr. C. R. Gray and during the time he was in the hospital he attempted to do nothing. The land owner from whom he had rented most of the land had his son look after practically all of the farming interests. In violation of the instruction of his physician, he did attempt to assist in threshing the rice by taking some hands from his home over to the rice fields and remaining there most of the days the threshing continued. He did none of the actual work himself, but did do some of the supervising in the way of employing hands and paying them for their services, but as soon as the threshing season was over, he made no further attempt to farm and did not make any rental contract for farming during the year 1941. He testified that he intended to try to do some farming on the 220 acres in which he owned an equity with the aid of his sons, but that he was really unable to do anything in the way of actual work on the farm or correct supervision thereof.

On direct examination, Dr. C. R. Gray testified that he practices in Newport and owns the Gray Sanatorium there; that he had been treating the appellee three or four years; that prior to 1939 appellee was in good health and he did not treat him; that on or about April 1, 1940, he examined him a number of times; that he complained of shortness of breath and pains in his left

side; that he then examined him and found that he had heart trouble and that that trouble had continued from that day until the present time; that he has myocarditis; that it has run so long now that it has become chronic; that there is no treatment that will cure it; that he cannot perform manual labor, that it would endanger his life and that he does not think appellee will be any better.

Many other witnesses testified that appellee was unable to carry on the farming business as he was accustomed to do.

It is true that Dr. H. A. Dishongh, called to examine him, thought that he had no functional trouble, and that the slight murmur he heard in his heart was systolic. Dr. Dishongh admitted that he told him to take it easy and do what his own physician, Dr. Gray, told him to do. He explained that he gave him that advice because Dr. Gray had diagnosed his case as a disease of the heart commonly known as angina pectoris.

We think there was substantial testimony to submit the issue to the jury of whether appellee was permanently and totally disabled and for that reason that the court did not err in refusing to peremptorily instruct a verdict for appellant.

Now as to the alleged error of the trial court for including in the judgment an item of $156 as a penalty and an attorney's fee of $400 and $115.70, the balance of the annual premium which appellee paid after the verdict was rendered, we think the objection and exception to this action on the part of the court is well taken. It will be remembered that appellee sued not only for the monthly allowance of $100, but also for $436.90, which he was compelled to pay as an annual premium after he became disabled, and for penalty and attorney's fee, which was more than he was entitled to recover when he brought the suit in December, 1940. According to the undisputed evidence he had not then paid the $115.70 and did not pay same until after the verdict of the jury.

In *Mutual Relief Association* v. *Poindexter*, 178 Ark. 205, 10 S. W. 2d 17, the appellee sued for $46.57 more than he was entitled to recover. It was held that the

penalties did not attach. This court decided in that case that the judgment against the association should be modified by reducing the recovery in that amount with interest and costs and without any penalty and attorney's fee, saying that: ". . . it is well settled that no penalty or attorney's fee can be collected where plaintiff does not recover the amount sued for—the sum demanded."

Many other cases are cited in support of this rule.

In the case of *Atlas Life Ins. Co.* v. *Kennedy,* 192 Ark. 202, 90 S. W. 2d 481, the plaintiff had sued for $2,271.75 plus premiums alleged to have been paid amounting to $74.10. The judgment was rendered for the sum of $2,271.75. The trial court declined to allow recovery for the penalty and attorney's fee, and the plaintiff took a cross-appeal and this court said: "As to the cross-appeal, appellee failed to recover the amount sued for, so the court properly disallowed penalty and attorney's fees under numerous decisions of this court."

The judgment rendered and entered by the court on the verdict must be modified to the extent of excluding the allowance of $156 for penalty and the allowance of $400 for attorney's fee and $115.70 for quarterly premium not paid until after the verdict and as thus modified will be and is affirmed.