[L. A. No. 24049.   In Bank.   Feb. 8, 1957.]

PAUL R. ENSIGN, Respondent, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY (a Corporation), Appellant.

Gray, Cary, Ames & Frye for Appellant.

Chandler & Durham and Robert J. Durham for Respondent.

SCHAUER, J.—Plaintiff brought this action to recover disability benefits alleged to be due from defendant under the terms of an insurance policy. The court, sitting without a jury, gave judgment for plaintiff, and defendant appeals. We have concluded that plaintiff is entitled to recover under the terms of the policy, and that the judgment should therefore be affirmed.

The facts, as disclosed by the record, appear to be substantially undisputed. In 1929, plaintiff, a physician, took out a "Non-cancellable Income Policy" of insurance from defendant.[1] The policy provided for payments for disability due to illness or injury resulting in "continuous, necessary and total loss of all business time." By the terms of the policy plaintiff had the right to renew it yearly until he was 60 years of age, but defendant reserved no rights to cancel the policy if premiums were paid. No element of estoppel, therefore, arises from the mere acceptance of premiums, and it is to the terms of the policy alone that plaintiff must look for his right to recover.

When plaintiff entered the Army in 1940, defendant waived payment of premiums since war risks were not covered by the policy, and plaintiff was given the option to renew the policy upon discharge from service. Plaintiff suffered severe illness while in service and was discharged in 1946 with a permanent disability rating. Following release from service, plaintiff, by letter to the insurance company, inquired as to the effect his disability would have on his rights under the policy and defendant replied by letter that the policy would not cover this disability or others resulting from his military service[2] but "it would, of course, cover any illnesses or injuries in accordance with the terms of the policy. . . ." Plaintiff thereupon exercised his option to renew the policy. After renewal, the premiums were paid and the policy kept in force through 1952.

Plaintiff's service-incurred disability, while permanent, was not total, and he was physically able to return to the practice of medicine or to engage in other types of employment if he so desired. Instead, however, he chose to retire, at least temporarily, and the trial court found that he was not gainfully employed subsequent to his discharge from the Army in 1946.

---

[1] The policy was originally issued by the Pacific Mutual Life Insurance Company of California. In 1936, pursuant to a rehabilitation and reinsurance agreement between defendant and the Insurance Commissioner of California, as conservator of the Pacific Mutual Life Insurance Company of California, the liabilities of the latter company, including the policy issued to plaintiff, were reinsured and assumed by defendant. We use the term "defendant" as referring either to defendant or the issuing company.

[2] In section 21 of the policy it is provided: "This insurance does not cover . . . (3) disability resulting wholly or partly, directly or indirectly from (a) bodily injury sustained or sickness contracted while the Insured is engaged in military or naval service in time of war. . . ."

In 1947, plaintiff filed a claim under the policy for disability payments due to an illness. In the claim plaintiff listed himself as a ''Physician (retired)'' but also indicated that he was self-employed, designated his usual duties as ''Medicine & Surgery,'' and stated that he had stopped all work on March 18, 1947. Defendant's claims adjuster, when he interviewed plaintiff in 1947, relative to that claim, learned that plaintiff had not been practicing his profession since his discharge from service. Defendant then took the position that the illness was service-connected and on that ground alone denied the claim.

In September, 1952, plaintiff's doctor discovered that plaintiff was suffering from a heart ailment and advised plaintiff to stop all physical exertion. Plaintiff filed a claim with defendant for indemnity under the policy, the claim was refused, and plaintiff instituted this action. The trial court found that the ailment did in fact totally disable plaintiff and that it was not service-incurred, and gave judgment for plaintiff. This appeal followed.

Defendant's claim of nonliability rests on its construction of the terms of the policy. The policy provides, in pertinent portions:

''Part A. (1) The Company will pay indemnity at the rate of Two Hundred . . . Dollars per month for the period throughout which disability described above [which includes disability resulting from sickness] consists of continuous, necessary and total loss of all business time. . . .

''25. Indemnity for disability will not be paid under this policy at a rate in excess of the average earnings of the Insured for the period of time that he has been actually employed during the two years immediately preceding the commencement of the disability for which the Company is liable, and all premiums paid during said two years for that portion of the disability indemnity in excess of the amount of such earnings will be returned upon request of the Insured. . . .''

The company raises two defenses: First, it asserts that plaintiff, as basic to the recovery sought, must bring himself within the terms of Part A (1) of the policy and show a loss of ''business time,'' and that since plaintiff had not been working at all for six years prior to the disability in question and had had no intention of coming out of retirement at the time he incurred the disabling ailment, this requisite was not satisfied. Second, the company contends that in

order to establish a measure of recovery under the terms of section 25 of the policy, plaintiff had to show average earnings in excess of zero during some part of the two prior years, and this he could not and did not do. The trial court rejected defendant's construction of the policy and determined that, construed favorably to the insured, the policy provides for recovery by plaintiff in the circumstances of this case.

■ As recently stated by this court, the following general rules govern the construction of ambiguous clauses in insurance contracts: "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] ■ If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citations.]

■ If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Const. Co.* (1956), 46 Cal.2d 423, 437-438 [296 P.2d 801].)

■ Defendant, arguing in support of its contention that plaintiff does not come within the coverage of the policy because he lost no "business time," asserts that, according to the evidence, plaintiff undoubtedly would not have worked after the time of the disability whether he had incurred it or not. But while such a situation may have been probable, it is not for this court to engage in speculation as to whether plaintiff would or would not have worked in the future were it not for the disability. The fact is that prior to the heart ailment plaintiff *could* have worked had he so desired, whereas after the illness he could *not*. ■ Defendant admits the obvious fact that even if plaintiff was not working at the date of a claimed disability and even if he had no present intention of returning to work, he might want to keep the policy alive (as in truth he did here) on the chance that he might later change his mind and take up some business activity. The policy therefore may be held to recognize that ability to work, not intention to work, possesses the character of "business time." This conclusion was reached in *Pacific Mut. Life Ins. Co.* v. *Riffel* (1941), 202 Ark. 94 [149 S.W.2d

57, 59], where the court, interpreting a policy of the company containing a clause similar to Part A (1) here, stated that "business time" means "ability to engage in sustained effort of a character sufficiently substantial to negative the idea that there was not a total loss of power reasonably to continue the business or profession."

While the foregoing definition is not controlling here, it appears to be a sound interpretation of a policy such as the one under consideration. ■ The company concedes that the purpose of the policy is not to insure against loss of income as such, but against loss of "business time"; this concession indicates that the essential attribute of "business time" is to be determined without reference to actual earnings, past or prospective.

■ The foregoing conclusions as to the character of "business time" also refute the contention of defendant that it is not liable under its policy because plaintiff's only occupation prior to disability was that of a *retired* physician, and that his disability would not prevent him from performing the "duties" of a "retired gentleman." (See *Knapp* v. *Preferred Mut. Acc. Assn.* (1889), 6 N.Y.S. 57, 58.) Regardless of what occupation plaintiff had been pursuing prior to the disability, the fact remains that before the disability, but not after it, he was physically able to go back to his former occupation as a physician or to undertake other gainful occupation suitable to his qualifications. In other words, until the onset of the last disability he had not suffered *"necessary and total loss of all business time."* (Italics added.)

Even if plaintiff comes within the coverage of the policy, defendant urges, plaintiff is barred from recovery by the specific requirements of section 25 of the policy, hereinabove quoted. This provision, defendant argues, establishes that the measure of recovery is to be reduced below the general standard set by Part A (1) of the policy to the extent that plaintiff's average earnings during the two years preceding disability were less than such standard, and, as plaintiff earned nothing during the two years just prior to the disability, his measure of recovery must be zero. In support of this contention defendant suggests that there is no purpose to section 25 if it is not to provide that an insured cannot recover more than he has been earning. But the very stating of defendant's argument serves to emphasize that the meaning it urges for such section is at best a debatable inference, an inference favorable to the insurer and adverse to the insured.

The trial court construed section 25 to mean that *"if* the insured was gainfully employed for any portion of the two-year period mentioned, the insurer would be liable only for an amount not in excess of the average earnings of the insured for the time he has been *actually employed* during said two-year period." (Italics added.) This interpretation, we conclude, is tenable, and more in harmony with applicable rules of construction than that urged by defendant. Section 25 provides that the insured will not be paid at a rate in excess of his average earnings for the period of time that *"he has been actually employed"* (italics added) during the two prior years. If an insured was idle for two years, during which he continued paying premiums, then resumed employment and on the first day back on the job incurred a permanent and total disability, it would require language different from any found in the subject policy to disqualify him from indemnity merely because he had not worked for the previous two years. If he had *not* "been actually employed" at any time within the two years he simply would not come within the class or circumstance to which the limitation of section 25 is by its terms applicable.

Certainly there is nothing in the policy which suggests that an insured who has *voluntarily* chosen to remain idle for two years or more, but who has continued to pay accruing premiums, may not thereafter choose to resume gainful occupation, or, regardless of whether he has or has not resumed gainful occupation, may not thereafter suffer disability which for the first time results in "continuous, *necessary* and total loss of all business time." (Italics added.) The only consideration for the premiums charged by defendant and paid by plaintiff was the promise of the former to pay the stated sum for the period of disability consisting of such "continuous, necessary and total loss of all business time." It has been clearly established that plaintiff's *time for business* has been continuously, necessarily and totally lost to him through a cause contemplated by the contract. Defendant's attempt to invoke section 25 as absolvatory of its primary obligation does not, in the circumstances of this case, commend itself to us. It appears to us to be manifestly more reasonable to construe section 25 as applying only where the insured had been actually employed during at least a part of the prior two-year period. In any event, since the meaning of section 25 is (at best, from defendant's standpoint) questionable, it must be construed favorably to the

insured and adversely to the insurer. (*Continental Cas. Co. v. Phoenix Const. Co.* (1956), *supra,* 46 Cal.2d 423, 437-438.) So construing the policy, it is apparent that the trial court correctly awarded recovery to plaintiff.

For the reasons above stated, the judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., and McComb, J., concurred.

SPENCE, J.—I dissent.

The policy in question is clear and unambiguous in its application to the admitted facts; and, in my opinion, the result reached by the trial court and by the majority is erroneously based upon a "forced construction against the insurer." (*Coit* v. *Jefferson Standard Life Ins. Co.,* 28 Cal.2d 1, 11 [168 P.2d 163, 168 A.L.R. 673] ; see also *New York Life Ins. Co.* v. *Hollender,* 38 Cal.2d 73, 81 [237 P.2d 510].)

The policy here was a "Non-cancellable Income Policy" insuring only against disability resulting in "continuous, necessary and total loss of all business time," with the amount of indemnity limited in two respects: (1) a maximum possible indemnity of two hundred dollars per month and (2) a general limitation set forth in section 25 providing that "Indemnity for disability will not be paid under this policy at a rate in excess of the average earnings of the Insured for the period of time that he has been actually employed during the two years immediately preceding the commencement of the disability. . . ."

The trial court found: "That it is true that Plaintiff has been voluntarily retired and has not been gainfully employed since January of 1946 and it is true that Plaintiff has had no earnings at any time during the two years immediately preceding the commencement of his disability which occurred on September 17, 1952." This finding, which is based upon admitted facts, clearly demonstrates that plaintiff is not entitled to recover any indemnity under the terms of the policy.

It is difficult to follow the reasoning of the majority opinion. It declares that the meaning of section 25 is "questionable" and that it is "more reasonable to construe section 25 as applying only where the insured had been actually employed during at least a part of the prior two-year period." Thus the majority's construction of the policy produces the following illogical results: if the insured had had average earnings of fifty dollars per month while employed during

the preceding two-year period, he would have been limited in his recovery of indemnity to fifty dollars per month during his disability; but as the insured had had no employment or earnings during the preceding two-year period, he is entitled to recover the maximum possible indemnity of two hundred dollars per month during his disability. I cannot agree. The provisions of section 25, limiting the indemnity to a rate not in excess of the insured's earnings during the specified period, whether read alone or in conjunction with the other provisions of the policy, are too clear and unambiguous in their application to the admitted facts to permit any such unreasonable and ''forced construction'' in support of plaintiff's recovery.

In conclusion, it should be said that there appears to be nothing unfair or inequitable in the terms of the policy as written. The policy was ''non-cancellable'' insofar as the insurer was concerned, but it could be terminated by the insured. The premium was no doubt fixed in the light of the clear limitations of the policy concerning the indemnity payments. The insurer could not refuse renewal premiums and manifestly could not control the insured's activities. The choice of renewal or termination rested each year solely with the insured, which choice could be made by him in the light of his probable plans and of the provision that ''all premiums paid during said two years for that portion of the disability indemnity in excess of the amount of such earnings will be returned upon request of the Insured. . . .'' Pursuant to that provision, and upon learning that the insured had had no earnings, the insurer here offered to return his premiums. Under the admitted facts and the plain provisions of the policy, he was entitled only to the return of such premiums and was not entitled to any indemnity.

I would reverse the judgment of the trial court.

Traynor, J., concurred.