[L. A. No. 24193.   In Bank.   May 10, 1957.]

IRVING ARENSON, Appellant, v. NATIONAL AUTOMO-
BILE AND CASUALTY INSURANCE COMPANY (a
Corporation), Respondent.

William Katz for Appellant.

Parker, Stanbury, Reese & McGee and Charles Agor Harrison for Respondent.

SCHAUER, J.—This is plaintiff's second appeal in an action based upon a policy of "comprehensive" personal liability insurance issued to plaintiff by defendant insurance company. This litigation, as well as an earlier related action in the municipal court, which included an appeal to the appellate department of the superior court, has been occasioned by defendant company's wrongful refusal to either defend plaintiff in the prior (municipal court) action or to discharge the judgment entered against him in such prior action and reimburse him for his costs and attorney's fees incurred in defending that action. Plaintiff prevailed in his first appeal herein and we conclude, for reasons hereinafter stated, that he should again prevail.

The briefs and arguments indicate that there has been

substantial confusion as to the nature of the current issue. It concerns the amount of plaintiff's obligation for an attorney's fee incurred in defending the municipal court litigation. Defendant has argued largely as though the action here were by an attorney to collect a fee. But the action is not one by an attorney against a client to collect a fee; neither does it involve a discretionary fee allowance by a judge as incident to a cause the proceedings in which have been heard by that judge who is, hence, presumed to be familiar enough with the attorney's services to know their extent and their propriety or impropriety, and to fix their value. This is quite another case; it is a suit by an insured against the insurer on a policy, liability under which has already been conclusively determined (*Arenson* v. *National Auto. & Cas. Ins. Co.* (1955), 45 Cal.2d 81, 84 [286 P.2d 816]), and the services for which the insured incurred his obligation were rendered in courts other than the instant trial court.

On the first appeal in the current action this court (in reversing a judgment for defendant) held that plaintiff is entitled to recover from the company the principal amount of the judgment theretofore rendered against plaintiff in the municipal court action, together with interest, court costs, and attorney's fees properly incurred by plaintiff in defense of that action. (*Arenson* v. *National Auto. & Cas. Ins. Co.* (1955), *supra.*) Plaintiff's right to recover and the identity of the items for which he is entitled to reimbursement have been finally adjudicated; the only open question relates to the amount of recovery.

On the new trial which followed the reversal, although there was uncontradicted evidence prima facie establishing the proper rendition to plaintiff of services of a reasonable value of $2,000, judgment was rendered awarding plaintiff the total sum of $488.36, including an allowance of only $175 as indemnification of his debt for attorney's fees. Plaintiff again appeals, urging that the item of $175 is, in the circumstances, inadequate and unsupported by the evidence.

The municipal court action was filed against the present plaintiff after his minor son ''acting jointly with another pupil'' started a fire in a waste basket which subsequently they were unable to extinguish, and which damaged property belonging to the Los Angeles City School District, of which the boy was a pupil. The school district, alleging that the boy's tort was wilful, instituted the action under section

16074 of the Education Code[1] to recover the amount of its loss, claimed to be $274.18. Plaintiff, in accordance with the terms of the personal liability insurance policy hereinabove mentioned, promptly forwarded the summons and complaint to defendant insurer and demanded that it defend the school district action against him. Defendant first responded, "We thank you for your report . . . [W]e can not see any legal liability on your part . . . We also wish to advise you that should claimant file suit . . . we will make defense on your behalf. In the event the court should erroneously award a judgment in favor of the school, we would then make pay-. ment on your behalf." Some three months later, however, defendant advised plaintiff that "the insurance policy which you had in effect . . . does not cover a loss of this type" and "we will be unable to make any payment on this claim." Defendant also refused to interpose any defense on plaintiff's behalf. Thereupon plaintiff engaged an attorney to defend the case for him on a *quantum meruit* basis. The attorney decided that the best defense to the action should include an attack on the constitutionality of section 16074;[2] he further determined that such a defense would be quite costly to present. Accordingly, in fairness to the company as well as to his client, he put up to defendant insurance company by letter the question as to whether in its own interest, if not in fidelity to its policyholder, it should (1) assume the defense of the action for plaintiff (defendant there) or (2) settle the claim against him or (3) gamble on letting its insured shift for himself and defeating his claim on its policy.[3]

---

[1]Section 16074 provides, in material part:

"Any pupil who wilfully cuts, defaces, or otherwise injures in any way any property, real or personal, belonging to a school district is liable to suspension or expulsion, and the parent or guardian shall be liable for all damages so caused by the pupil. . . ."

[2]The attorney testified that:

"A search of the law determined that the section was on the statute books of this state since 1874. And there was no judicial interpretation or construction of that section in this state.

"Further research was then made into the law of other states of the United States. And after abundance of research of the law of the states, of other states, it was discovered that this section of the Education Code had no counterpart in any other state of the United States . . . ."

The attorney concluded from this research that the statute was subject to attack on the ground that it established an unreasonable and improper classification.

[3]Such letter reads as follows:

"This is to advise you that the trial of the action you refused to defend is set for May 9, 1952, at 9:30 A. M. in Division I of the Municipal Court.

"As you know, the total amount sought to be recovered by plaintiff in

It chose the latter alternative. This it had a right to do, and its good faith in so doing is not questioned. But it must have known that plaintiff had an equal right to press his claim under the policy it had written and that if he ultimately prevailed it should, in justice, have to make full reimbursement to him.

Following the company's refusal to defend, plaintiff's attorney prepared and presented the defense on certain questions of fact and on the above mentioned constitutional grounds. The municipal court rendered judgment for the school district in the amount of $255.16, plus costs, whereupon plaintiff appealed to the appellate department of the superior court and was initially successful. That court entered its order reversing the municipal court judgment. In a memorandum opinion it stated that "We regard the statute here involved, Education Code section 16074, as valid," but "the evidence is not sufficient to show that the damage complained of was caused by any act of defendants' child," and that hearsay evidence had been erroneously admitted. However, such reversal was based on an erroneous assumption of facts. To clarify the matter and to avoid the expense of a new trial on an issue of fact which did not in truth justify a new trial, counsel then stipulated to an amendment of the settled statement on appeal.[4] On the basis of the amended

that action is $274.18. The action involves a number of complex and intricate questions of constitutional law and the interpretation and construction of a statute of this state, no counterpart of which appears to exist in any of our sister states, and which has never been the subject of judicial decision.

"The amount of time, effort and energy which must be expended to properly prepare for the defense of this action will, of necessity, substantially exceed the total amount involved in the litigation. Your refusal to defend such action on behalf of your assured has placed your assured in the position in which he was compelled to employ counsel to defend him and his wife in such action. However, he and Mrs. Arenson both have looked, and will continue to look to you for the defense thereof, or to reimburse them for all of their costs, fees and expenses, including counsel fees, for the defense of such action, as well as, of course, the payment of any judgment which may be recovered against either of them therein.

"This letter is intended to put you on notice of the fact that the reasonable amount of attorney's fees incurred and to be incurred by the Arenson's in the defense of the action against them will be much greater than the total amount of the claim, in order that *you may prefer to settle or satisfy the claim of the Los Angeles School District rather than to expose yourself to the additional claim which will be made against you for the services yet to be rendered* to Mr. and Mrs. Arenson in said action, and the costs, fees and expenses, including attorneys fees, which will necessarily be incurred by them." (Italics added.)

[4]Arenson's attorney testified that the settled statement had incorrectly set forth the stipulation of the parties as to the facts, and because on

statement the school district obtained a rehearing and reargument of the case. Upon the rehearing the appellate department again ruled against plaintiff's (defendant there) contention that the statute was unconstitutional, but this time held that the evidence, in light of the amended settled statement, was sufficient to support the judgment and that the admission of the hearsay testimony was nonprejudicial, and affirmed the judgment. This terminated the litigation adversely to plaintiff insofar as his liability to the school district is concerned. Likewise it determined the issues involved in that litigation adversely to defendant insurance company if the policy it had sold to plaintiff covered his liability. The latter issue remained to be determined.

Plaintiff then instituted the present action in the superior court for a declaration of his rights and to recover from the insurance company the amount of the municipal court judgment, costs incurred in the school district's action, and his obligation to pay an attorney's fee for the defense of that action. Defendant answered admitting issuance of the ''certain personal Comprehensive insurance policy'' relied on by plaintiff but denying any liability in the premises; it contended that plaintiff was not covered by the policy for the tort sued on by the school district. This raised directly the important issue of law determined by this court in the prior appeal. The trial court accepted defendant's theory but this court reversed. We held that the policy covered the tort sued on and that ''Plaintiff is entitled to recover the principal amount of the judgment against him with interest together with court costs and attorneys' fees properly incurred by him in defense of the school district's claim.'' (*Arenson* v. *National Auto. & Cas. Ins. Co.* (1955), *supra*, 45 Cal.2d 81, 84 [7].)

Upon retrial, the only issue in dispute was the amount properly chargeable to the insurer to indemnify plaintiff for

retrial the school district would have been able to prove the actual facts, the attorney agreed to amend the settled statement to conform to the truth in order that a rehearing could be obtained ''so that we could get a decision that would be determinative of the problem from the standpoint of actual legal liability, because either the section was not constitutional or because under the facts they could not recover and not merely have procedural errors that could be corrected. Those procedural errors were eliminated.'' Since a retrial would normally be more costly than a reargument on appeal, this action by the attorney would appear to constitute a good faith attempt to keep the cost of litigation down. Likewise it evidences a high standard of duty to the court and unwillingness to have the court misled as to a material matter of fact by an inaccuracy or inadequacy in a stipulation of facts.

his obligation to pay an attorney's fee "properly incurred" in the defense of the action by the school district. The trial court had before it certain correspondence between plaintiff, the latter's attorney, and the insurance company, including the letter to the company hereinabove quoted in material part in footnote 3, and the records of the municipal court and the appellate department of the superior court in the school district's action. The only witness was the attorney, Mr. William Katz, who detailed his services and the charges therefor, which totaled $2,027.50,[5] for which he had billed plaintiff.

[5]The services and charges therefor itemized by the attorney in his testimony were substantially as follows:

1. Letter to county counsel re filing amended answer — $ 10.00
2. Preparing and filing stipulation to file amended answer — 15.00
3. Preparing and filing substitution of attorneys, substituting Mr. Katz for Mr. and Mrs. Arenson in propria persona — 15.00
4. Letter to Mr. and Mrs. Arenson advising them of date of trial — 10.00
5. Trial of action on merits in the municipal court, consuming better part of one day — 100.00
6. Consultations with Mr. Arenson in preparation for trial, 5 hours at $12.50 an hour — 62.50
7. Conferences with Mr. Arenson's minor son, two hours at $12.50 an hour — 25.00
8. Telephone conferences with county counsel — 5.00
9. Letter to county counsel about the case — 10.00
10. Three letters to Mr. Arenson about the case — 30.00
11. Further conferences with county counsel — 5.00
12. Research into the laws of sister states and foreign jurisdictions pertaining to the constitutional issues, 64 hours at $12.50 an hour — 800.00

Total of itemized charges for services rendered in the municipal court action to and including entry of judgment therein . $1,087.50

13. Preparing and filing notice of appeal and request for transcript — 25.00
14. Preparing and filing settled statement on appeal — 100.00
15. Preparing and filing opening brief — 150.00
16. Preparing and filing reply brief — 100.00
17. Appearance and argument on appeal — 150.00
18. Conference with county counsel respecting stipulation to amend the settled statement — 15.00
19. Appearance and argument on rehearing of appeal — 150.00
20. Research on questions involved in the appeal, 20 hours at $12.50 an hour — 250.00

Total itemized charges for services rendered on appeal — $ 940.00

Total itemized charges for case — $2,027.50

Plaintiff's exhibit 8, received by the trial court as a summary of the attorney's testimony and not as evidence of charges actually made, indicates rendition of certain additional services in the municipal court which would bring the total charges for the case to the sum of $2,142.50, rather than $2,027.50 as itemized in the testimony, but the discrepancy

On cross-examination Mr. Katz testified that ''I had an agreement with them [Mr. and Mrs. Arenson] that my fee was the amount for which I billed them'' but ''I want to clarify that a little further. Up to this point, I have received nothing. I have not received the return of my costs which I have advanced. My clients have been paying off the judgment rendered against them in the Municipal Court at the rate of $15 or $20 a month. . . . And if they . . . pay me . . . it would be in the same way. And, then, I doubt very much that I would get it. . . . As a matter of fact, this case was one that at the outset when I went into it I made no arrangement with respect to the fee because I did not know how much time and effort would go into it; that was to be based upon the working involved and the complexity of the matter and the time spent on it, and the like; after I got into the case I was in the position of having a bear by the tail, I couldn't hang on and was afraid to let go. I didn't want to put myself in the position of leaving these clients in the lurch. I knew what their financial position was. And so I went right on through with the defense of the action. I felt that the action should have been defended by the carrier . . . I want to make the explanation . . . I not only intended to charge them, I actually did charge them by billing them for it. And I have billed them continuously since the services have been performed. I did not expect to get it, counsel. I doubt that these people are in a position to pay that kind of money.''

The trial court found that ''the attorney's fees reasonably and properly incurred by the plaintiff in defense of the claim of the Los Angeles City School District of Los Angeles County is the sum of $175.00,'' and, as above stated, awarded that sum as part of the total judgment of $488.36.

In determining the adequacy of the amount awarded the insured plaintiff as indemnification for his obligation for attorney's fees three questions are presented. First, is the fact that plaintiff-insured may not have been financially able to employ counsel and make a defense in an action, which defendant-insurer should have defended, a ground for denying

appears to be immaterial in view of the fact that plaintiff in his complaint has alleged, and has sought to recover, the sum of only $2,000.

Plaintiff's attorney further testified that although he had computed the charges for conferences with the Arensons and for legal research, at only $12.50 an hour, this sum was actually only ''one-half of an amount which is fair and reasonable, a fair and reasonable charge being $25.00 an hour, rather than $12.50 an hour.''

or limiting recovery against the insurer? Second, were *all* of the services which the attorney performed properly rendered to plaintiff in defending the municipal court action? Or, to phrase it differently, in determining the attorney's fees properly incurred by plaintiff (and hence chargeable to defendant insurance company) may the value of any of such services be excluded or were they all reasonably pertinent to plaintiff's defense? Third, what, under all the circumstances shown, is the reasonable value of the rendered services which were reasonably pertinent to plaintiff's defense? In considering these questions it is to be emphasized, as has been above indicated, that this is not an action by an attorney against his client to recover his fees, but is, rather, an action by an insured seeking reimbursement from defendant insurance company, under the terms of the insurance contract, for an obligation properly incurred by the insured in defending an action against which the insurance company wrongfully refused to provide the defense.

█ The principles applicable to liability of an insurance company for attorney's fees thus incurred by an insured, insofar as they are relevant here, are stated in 8 Appleman, Insurance Law and Practice 36-41, section 4691, as follows:

"An insurer's unwarranted refusal to defend a suit against the insured has been held to relieve the latter from his contract obligation to leave the management of such suits to the insurer, and to justify him in defending the action on his own account. And where the insured is thus compelled to conduct his own defense, it is uniformly held that he may recover the expenses of litigation, including costs and attorneys' fees, from the insurer. . . .

"Reimbursement for the expenses of litigation has been allowed to the insured, even though his defense was unsuccessful. . . . The insured can also recover the expenses of an appeal . . . [at least where the grounds for appeal are reasonable. (*Grand Union Co.* v. *General Accident, etc., Assur. Corp.* (1938), 254 App.Div. 274 [4 N.Y.S.2d 704, 711 [8]], affirmed 279 N.Y. 638 [18 N.E.2d 38].) This has been held true even where the appeal was unsuccessful. (*John B. Stevens & Co.* v. *Frankfort M., A. & P.G. Ins. Co.* (1913, 9th Cir.), 125 C.C.A. 295 [207 F. 757, 762 [3], 47 L.R.A. N.S. 1214].)]" (For a more complete discussion of the foregoing rules and collection of cases in support thereof see the annotation in 49 A.L.R.2d 694, 711-760; see also 45 C.J.S. 1062, § 934; *Aetna Life Ins. Co.* v. *Heiden* (1931) 184 Ark. 291 [42

S.W.2d 392, 394]; *Southern Ry. News Co.* v. *Fidelity & Casualty Co.* (1904), 26 Ky.L.Rep. 1217 [83 S.W. 620, 622]; *Carthage Stone Co.* v. *Travelers' Ins. Co.* (1915), 186 Mo.App. 318 [172 S.W. 458, 460].)

In the present case defendant insurance company by respecting its contract with plaintiff could have prevented (or itself have handled) the extensive litigation in which plaintiff engaged in defending the action by the school district. Plaintiff did not voluntarily employ an attorney. He was, in the exercise of ordinary prudence, compelled to do so when he and his wife were sued on a claim covered by defendant's policy and defendant refused to either defend or settle. Plaintiff employed a well-known, able and skilled[6] attorney and was entitled to expect the attorney to defend him to the best of his ability and in all courts in which his claims could properly be presented. Neither plaintiff nor the attorney could be sure, in defending the school district action, that defendant insurance company could ever be compelled to pay a judgment adverse to Arenson in that action and also to respond for attorney's fees and costs. Furthermore, although plaintiff did not prevail on the constitutional issues in either the municipal court or the appellate department of the superior court, there is no showing that such issues were not debatable or were not advanced in good faith in the belief that they presented the best defense to the action against Arenson. The record is devoid of any evidence that the attorney did not actually perform the services exactly as enumerated in his testimony.

An insurance company may not wrongfully refuse to defend its insured and thus force the insured into the position of having to engage outside counsel, and then, because the defense was not handled in a manner to the liking of the company, refuse to hold the insured harmless against payment of fees for all services reasonably performed in such defense. Surely the insurance company will not favorably be heard to urge that plaintiff's counsel acted improperly when he, knowing his clients' financial position, nevertheless refused to put himself "in the position of leaving these clients in the lurch" and "went right on through with the defense of the action." It would appear, on this record, that Mr. Katz is to be commended rather than criticized for his conduct.

---

[6] If it be material here, the fact that plaintiff and the attorney were eventually successful as against defendant would appear to be cogent evidence of the attorney's skill.

■ As we have recently reiterated, "If semantically permissible, the [insurance] contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation.] ■ If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956), 46 Cal.2d 423, 437-438 [11, 12] [296 P.2d 801]; *Ensign* v. *Pacific Mut. Life Ins. Co.* (1957), 47 Cal.2d 884, 888 [2, 3] [306 P.2d 448].) ■ Here, the company agreed to defend any suit brought against Arenson in which damages for injury to property was alleged (see *Arenson* v. *National Auto. & Cas. Ins. Co.* (1955), *supra,* 45 Cal.2d 81, 82). Having defaulted such agreement the company is manifestly bound to reimburse its insured for the full amount of any obligation reasonably incurred by him. It will not be allowed to defeat or whittle down its obligation on the theory that plaintiff himself was of such limited financial ability that he could not afford to employ able counsel, or to present every reasonable defense, or to carry his cause to the highest court having jurisdiction, and that therefore he should not have had, and will not be allowed compensation for, an attorney who filled the breach. Sustaining such a theory would not only tend to discourage busy attorneys from rendering adequate services for needy clients but would tend also to encourage insurance companies to similar disavowals of responsibility with everything to gain and nothing to lose. ■ If there be uncertainty as to the nature or extent of the services reasonably to be rendered by counsel engaged by the insured, that uncertainty must be resolved against defendant insurer. As declared in *Speegle* v. *Board of Fire Underwriters* (1946), 29 Cal.2d 34, 46 [14] [172 P.2d 867], "[T]he wrongdoer shall bear the risk of the uncertainty which his own wrong has created." There is in the record before us no basis whatsoever for concluding that plaintiff is asking indemnification for services not rendered to him in good faith or for which he has not in good faith been billed, or that he seeks more than he reasonably expects to pay his attorney upon recoupment of that obligation from defendant. We hold that on the record before us plaintiff

(insured) was warranted, so far as relates to the liability of defendant (insurer), in proceeding as he did in defense of the municipal court action, and that attorney's fees were properly incurred for all of the services which the evidence (see footnote 5, *supra*) shows were performed by the attorney engaged by plaintiff.

The next question is as to the reasonable value of such services. Without here again detailing the extent of the services rendered by plaintiff's attorney, it is at once apparent that a fee of $175 is so grossly inadequate that we are impelled to the conclusion that the trial court must have been under a misapprehension either as to the nature of defendant's obligation to the insured or as to the extent of the services which were properly rendered to plaintiff.[7] (See *Berry* v. *Chaplin* (1946), 74 Cal.App.2d 669, 680-681 [169 P.2d 453].) This conclusion is further compelled by the testimony of the attorney himself, which was in no way controverted by defendant insurance company and which placed a value of some $2,000 on the services rendered—a value which on the record would appear entirely reasonable.

Although it has been said that this court possesses the power and ability to appraise and adjudicate the value of attorney's services (*Kirk* v. *Culley* (1927), 202 Cal. 501, 510 [261 P. 994]), we deem it better practice, particularly where it appears as it does here that there was some misapprehension in the trial court as to the nature of the issue to be resolved, that the new determination be made in the trial court. The matter will therefore be remanded for that purpose.

Plaintiff also complains of the quashing of a subpoena duces tecum which he had caused to be served on defendant requiring defendant to produce its files of actions pending in the municipal court in the years 1951 to 1955, inclusive, in which the company had employed counsel for or on behalf of the defendants in the actions or had itself defended, together with its records of the services rendered by counsel, the bills and statements submitted by such counsel, the ledger, cash disbursement book, or other record showing the amounts paid by defendant for the services so rendered, as well as similar records for appeals taken from the

---

[7]In announcing its decision from the bench, the trial court stated that the judgment for the plaintiff would include "the sum of $175.00 attorney's fees, being the reasonable value of services *properly rendered* in the defense of the Municipal Court action and appeal therefrom . . ." (Italics added.)

municipal court to the appellate department of the superior court during that period. It is apparent that the subpoena as served was too broad in some of its demands and that compliance would have put an unnecessary burden on defendant. It should have been restricted to data which would be relevant as having some substantial similarity to the case at bar. The ruling of the trial court quashing this subpoena does not, therefore, furnish a ground for reversal of the judgment, and the question in its present application need not occur on the new trial.

For the reasons above stated, the judgment is reversed and the cause remanded for a new trial on the issue which remains open.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and McComb, J., concurred.

SPENCE, J.—I dissent.

My views are in accord with those expressed in the opinion of the District Court of Appeal written by Mr. Justice Ashburn. (*Arenson* v. *National Auto. & Cas. Co.,* (Cal.App.) 302 P.2d 877.) I would therefore modify and affirm the judgment.