301 F.2d 467
 UNITED STATES of America ex rel. Harry SHERMAN et al., as Trustees of the Laborers Health and Welfare Trust Fund for Northern California, Appellants,
v.
Donald G. CARTER, Individually, Donald G. Carter, d/b/a Carter Construction Company, Carter Construction Company, Hartford Accident and Indemnity Company, et al., Appellees.
 No. 17204.
 United States Court of Appeals Ninth Circuit.
 March 30, 1962.
 
 Gardiner Johnson, Thomas E. Stanton, Jr., Charles P. Scully, San Francisco, Cal., Johnson & Stanton, San Francisco, Cal., of counsel, for appellant.
 Dinkelspiel & Dinkelspiel, Richard C. Dinkelspiel and John F. Taylor, San Francisco, Cal., for appellee Hartford Accident & Indemnity Co.
 Before ORR, POPE and HAMLIN, Circuit Judges.
 POPE, Circuit Judge.
 
 
 1
 This action, here on appeal for the third time, was first filed in the district court in April, 1954. The appellee Carter, a building contractor who had contracted with the United States to construct certain public buildings, was a party to a collective bargaining agreement with his employees, whereby he was required to pay into a "health and welfare fund" the sum of 7½ cents per hour for each hour worked by laborers employed by him. As Carter failed to make all the contributions called for, the appellant trustees of such fund sued invoking the Miller Act, (40 U.S.C.A. §§ 270a, 270b), joining as defendant the appellee indemnity company which had furnished the payment bond called for by the Act.
 
 
 2
 The contract provided that in case of default in the payment of the required contributions, the trustees of the fund should be entitled to certain liquidated damages to be computed as stated in the contract; it also provided for payment of attorneys' fees, court costs, and other legal expenses, as follows: "If any individual employer defaults in the making of such contributions or payments and if the Board consults legal counsel with respect thereto, or files any suit or claim with respect thereto, there shall be added to the obligation of the employer who is in default, reasonable attorneys' fees, court costs and all other reasonable expenses incurred by the Board in connection with such suit or claim."
 
 
 3
 The trial court granted summary judgment for the defendants. Upon appeal to this court that judgment was affirmed. United States for Benefit and on Behalf of Sherman v. Carter, 9 Cir., 229 F.2d 645. Thereupon the trustees petitioned for certiorari, which was granted; and after hearing in the Supreme Court the judgment of this court was reversed and the cause was remanded to the district court for further action consistent with the Supreme Court's opinion. United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776.[1]
 
 
 4
 The Supreme Court held that the plaintiffs were entitled to sue on the bond and to recover the stipulated contributions. The Court said: "For purposes of the Miller Act, these contributions are in substance as much `justly due' to the employees who have earned them as are the wages payable directly to them in cash." The Court also held that the trustees were entitled to recover the stipulated liquidated damages and attorneys' fees and other expenses of the litigation. Concerning this the Court said: "The trustees' claim for liquidated damages, attorneys' fees, court costs and other related expenses of this litigation has equal merit. The contractor's obligation to pay these items is set forth in the trust agreement. It is stipulated that they form a part of the consideration which Carter agreed to pay for services performed by his employees. If the employees are to be `paid in full' the `sums justly due' to them, these items must be included. Their amount, however, remains to be determined. We hold that the Miller Act makes the surety liable on its payment bond for the delinquent contributions to the fund, together with the additional items above described."
 
 
 5
 Following the remand, the plaintiffs moved for summary judgment for the unpaid contributions, for liquidated damages, and for $1751 in costs and miscellaneous expenses in connection with the suit and $9960 as attorneys' fees. The court granted judgment for the unpaid contributions and the liquidated damages (as to which two items there was and is no dispute), and awarded $2175 attorneys' fees; $367.97, costs and expenses "incurred by plaintiff in the district court and in the United States Court of Appeals"; and $219.11, for costs expended by plaintiffs in the Supreme Court "which are allowed by the mandate of said Court". Plaintiffs were awarded interest upon the various items of costs for periods stated in the judgment.
 
 
 6
 The court made no award on account of attorneys' fees, costs or expenses incurred in connection with carrying the case to the Supreme Court other than the $219.11 for costs taxed by that Court, and made no allowance for attorneys' fees, costs or expenses in connection with the presentation of the case on remand in the district court, and expressly stated that in entering the judgment the court was limiting defendant's liability "to the fees and costs incurred up to the time of judgment in the Court of Appeals."
 
 
 7
 The plaintiff trustees appealed from the judgment thus entered to this court. On that second appeal appellants stated their points on appeal to be that the court erred in limiting the defendants' surety company's liability to those attorneys' fees and costs which had been incurred up to the time of judgment in the Court of Appeals, and that the attorneys' fees should have been allowed in a greater amount. They contended that the court was in error in making allowance for attorneys' fees, court costs and other related expenses in amounts less than the total amount incurred by plaintiffs for these items. They asserted they were entitled to an additional allowance for attorneys' fees, court costs and other related expenses incurred subsequent to filing their motion for summary judgment upon remand from the Supreme Court to the district court.
 
 
 8
 It is to be noted that while the appellants thus assert that in fixing attorneys' fees, court costs and expenses incurred by them up to the time of judgment in the court of appeals the court should have allowed larger sums, and also asserted a claim for additional allowances for those costs proposed in connection with current proceedings, yet the primary point made was the failure of the court below to make any allowance other than the $219.11, previously mentioned, for attorneys' fees, costs and expenses incurred by plaintiffs in connection with proceedings in the Supreme Court.
 
 
 9
 This court, upon the second appeal, stated: "After the remand, the district court again considered the case and made certain awards of court costs and attorneys' fees. In said awards the district court excluded reimbursement for attorneys' fees and expenses incurred by appellants in taking the case to the Supreme Court of the United States. In this we think the court erred. In our opinion, this was an expense clearly within the bond and mandate of the Supreme Court for which appellants were entitled to receive a reasonable amount as reimbursement."
 
 
 10
 The appellees had taken no cross-appeal and in their brief on that second appeal to this court they made no contention or argument that the award made by the district court for attorneys' fees, costs and expenses, was excessive. Indeed, appellees, stated: "The decision of the district court not only is consistent with the law of damages, but also reaches the fairest result under the circumstances." Their contention was limited to the proposition that "Plaintiffs are not entitled to additional attorneys' fees, costs and expenses incurred in this proceeding."
 
 
 11
 Notwithstanding the fact that there was no contention in this court on that second appeal that the award in respect to plaintiffs' expenses for these items in the district court to the date of the first judgment in the Court of Appeals was excessive or exceeded a reasonable amount to that date, this court concluded its opinion as follows: "We reverse the judgment and remand so that the district court may have a free hand in determining the amount of the attorneys' fees, expenses and court costs due appellants for the entire litigation, including the appeal to the Supreme Court and the instant appeal to this court."
 
 
 12
 Upon that further remand the district court, understandingly, had some difficulty, as the record shows, in arriving at a conclusion as to just what this court required it to do. It is clear that by the time the mandate following this second appeal reached the district court some additional allowable fees, costs and expenses had accrued. As is noted above, the court's first judgment in respect to the attorneys' fees, costs and expenses, had with the exception of $219.11, costs taxed by the Supreme Court, covered only attorneys' fees, costs and expenses incurred by the plaintiffs through the first appeal to this court. The court then in the judgment now under appeal awarded plaintiffs the sum of $441.39, for costs incurred by plaintiffs on the second appeal, and $848.42, costs and expenses incurred in the Supreme Court.[2]
 
 
 13
 With respect to the award of attorneys' fees, it is to be noted that in its judgment following remand from the Supreme Court which awarded attorneys' fees only to the date of the judgment of this court on the first appeal, the award had been $2175. The court on its final trial, after taking into account as required by our mandate the award of attorneys' fees incurred in the Supreme Court proceedings, and attorneys' fees incurred in connection with the hearing on remand to the district court from the Supreme Court, and attorneys' fees incurred on the second appeal to this court, awarded only $1500 for all attorneys' fees.
 
 
 14
 Throughout the litigation each of the parties has presented its own theory as to what the court should take into consideration in fixing fees in a case of this kind. The appellants undertake to state their theory as to the proper allowance for attorneys' fees in their third point on the second appeal to this court, as follows: "(3). The District Court erred in fixing the allowance for attorneys' fees, court costs and other related expenses of litigation at a sum less than the total amount incurred by plaintiffs for these items." Appellants' position has been that by the terms of the contract, which is the basis for this action, and particularly the clause previously quoted above, the appellees promised that if the employer defaulted on contributions, and if the board of trustees filed any suit or claim with respect thereto, "there shall be added to the obligation of the employer who is in default, reasonable attorneys' fees, court costs and all other reasonable expenses incurred by the board in connection with such suit or claim." The argument is that such attorneys' fees, court costs and other expenses, thus referred to and provided to be recovered, were precisely the same fees and the same in amount as those which were "incurred" by the board; that they were subject to the requirement that they must be "reasonable", but that the test as to the amount of the employers' liability should be precisely the same as the test to be applied if the attorneys were suing the board for recovery of their fees, costs and expenses in the event the board had declined to pay.[3]
 
 
 15
 The appellees challenge this, arguing that when an allowance is made in a case of this kind by judgment of the court, the amount to be awarded is within the discretion of the court.[4]
 
 
 16
 Appellants assert that their theory gains support from the language of the Supreme Court in the paragraph quoted above: "If the employees are to be `paid in full' the `sums justly due' to them, these items must be included."[5]
 
 
 17
 It may well be that there is reason for drawing a distinction between cases in which a statute authorizes the court to fix and allow attorneys' fees, or where under general rules of equity attorneys' fees are properly awarded out of a trust fund which has been recovered or preserved through intervention of a party who has employed attorneys as in United States v. Equitable Trust Co., 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379, on the one hand, and other cases like the present where the reasonable attorneys' fees of one party to a contract are made payable by another.
 
 
 18
 We are of the opinion, however, that this case can be disposed of without accepting the theory of either party for the reason that the trial court in its judgment adopted its independent theory as a basis for its action. In its order for judgment the court said: "The great bulk of the attorneys' fees which plaintiffs incurred were not `incurred in connection with the suit' within the meaning of the language of the contract between the parties. They were in reality so incurred by plaintiffs for the specific purpose of litigating a test case to achieve far reaching results and benefits, entirely unrelated to the collection of the small sums involved in the three instant cases. The fees and expenses of such a project are not chargeable to Defendants under the contract." It thus appears that in the view of the trial court only a portion of the plaintiffs' attorneys' fees were incurred in connection with the suit within the meaning of the contract. It is plain that it was the court's view that a large portion of the attorneys' fees related to the litigating of a "test case".
 
 
 19
 The $1500 allowed for attorneys' fees is not broken down. It is a lump sum covering: (1), services in the original trial in the district court; (2), services in connection with the first appeal to this court; (3), services in the proceedings in the Supreme Court; (4), services in the district court on remand to that court; (5), services performed in this court on the second appeal; and (6), attorneys' fees in the district court in the hearing which we are now reviewing.
 
 
 20
 In attempting to arrive at a conclusion as to whether the amount of attorneys' fees fixed by the trial court was proper, or whether it was so small as to be clearly an erroneous award, we think it necessary to analyze and evaluate the several proceedings, in these various courts, separately. We think that a just sum cannot be arrived at by lumping the services performed all together, for at these various stages different problems with varying difficulties, were involved. To illustrate: Even if we were to accept as sound the trial court's division of certain of the attorneys' services into two categories, one having to do with the recovery of the contributions, and the other with the maintenance of a "test case", with only the fees allocable to the first part recoverable here, it is plain that such division would not be proper or applicable to those proceedings which followed the remand by the Supreme Court. For once the Supreme Court had spoken the "test case" was over with, the problem to be settled had then been tested and decided. From that time on the appellants' sole effort was to collect what the Supreme Court had said they were entitled to; — from that time on this was like any other action for the recovery of sums owing. This was true as to parts (4), (5) and (6), mentioned above. We see no justification for an allowance of less than $200 for each of these two trials in the district court (4) and (6) above; and we think it would be clearly erroneous to fix the attorneys' fees for the second appeal, (5), at less than $500. Nor can we envision any skilled and experienced attorney undertaking to seek certiorari and to handle a case such as this one in the Supreme Court for a fee less than $1000.
 
 
 21
 The question arises, then, how could the trial court have arrived at its figure of $1500? If we assume that it allowed $200, $500, and $200, for items (4), (5), and (6), and that using its theory of dividing the fees in the Supreme Court it allowed but $500 for these services, we could account for a total of $1400 for items (3), (4), (5), and (6). This would leave but $100 of the $1500 for items (1) and (2). For these two items the trial court, on remand from the Supreme Court, considered it proper to award $2175!
 
 
 22
 It is true that our former Per Curiam opinion stated our intention to permit the trial court to disregard its former findings; but the result thereafter reached by the trial court indicates that it misconstrued our mandate. No such result as that which the court accomplished was intended by us.
 
 
 23
 Again, we cannot find any justification in the record for the court splitting its allowance between the fees for the lawsuit proper and fees for "litigating a test case". Indeed, the nature of the contract here involved indicates that the trustees were dealing with many different contractors and builders whose individual obligations might be small when taken alone. If the trustees were required to sue separately any one defaulting contractor for his contributions, which might be minor in amount, and have the attorneys' fees fixed solely by reference to the amount sued for, the trustees would soon find their task of keeping collections current unreasonably burdensome.
 
 
 24
 It is fair to assume that the trustees for their part were contemplating the necessity of employing counsel and undertaking litigation of the character here involved; and that they intended by their contract to have adequate reimbursement for their fees regardless of the amount sued for in an individual suit. It also seems plain that the indemnity company in executing the Miller Act bond must have contemplated the same thing, — that it might well be made defendant in a suit whose importance would exceed the amount involved. The contract cannot be interpreted as requiring the court to reduce the attorneys' fees to be awarded merely because the litigation involved might result in the establishment of an important precedent. Quite the contrary. In the case of E. H. Clarke Lumber Co. v. Kurth, 9 Cir., 152 F.2d 914, this court, in fixing an attorney's fee to be allowed in an appeal to this court, treated the fact that the litigation settled an important question as a reason for enlarging rather than diminishing the amount of attorney's fees allowed.[6]
 
 
 25
 While it is true that in many instances the amount involved in a particular case may be an important consideration in fixing an attorney's fee, so that where a small amount is involved a small attorney's fee is called for, that is not necessarily the case, nor do we think that principle should have unlimited operation here where though the amount involved was small, the legal questions were difficult and important. Illustrations of cases where because of the importance of the litigation the award was not governed by the amount involved are to be found in Great American Indemnity Co. v. State, 32 Del.Ch. 562, 88 A.2d 426, and Arenson v. National Automobile & Casualty Ins. Co., 48 Cal.2d 528, 310 P.2d 961, supra.
 
 
 26
 We hold therefore that upon this record the limitation of the attorneys' fees awarded in the judgment below to $1500 was clearly erroneous. In our opinion the trial court should have allowed not less than $500 each for the first two appeals to this court and $1000 for the attorneys' fees in the Supreme Court. Upon the original trial of the case in the district court, where the record was first made, the attorneys' fees allowed should have been not less than $400; for the successive trials in the district court the attorneys' fees allowed should have been not less than $200 each, and for the present appeal to this court, no less than $500 attorneys' fees should be allowed. This makes an aggregate of $3300.
 
 
 27
 This brings us to another ruling of the trial court which we think was plainly erroneous. The court allowed for costs and expenses on appeal to the Supreme Court $848.42, stating that those were limited to the costs incurred in preparing and printing the record in that court. The items which made up that sum were the docket fees in the Supreme Court; handling, printing, and supervising charges in the Supreme Court; and the cost of printing petition for writ and opening and reply briefs. But the court refused reimbursement of the expenses of the plaintiffs' attorneys to and from Washington, D. C., including transportation fees, laundry and valet services. The court's reason for this ruling was: "Counsel could have been employed in Washington and their reasonable charges included in their claim for attorneys' fees." We find no justification whatever for such a ruling. There was no evidence to show that Washington counsel, who presumably would have been unfamiliar with the prior course of the litigation, could have been employed to perform the necessary services in Washington for anywhere near the expenses of travel undertaken by the trustees' attorneys who had handled the litigation and prepared the briefs.
 
 
 28
 We hold that under the contract those expenses were necessary and reasonable in amount. They are of the type customarily incurred by counsel when traveling on behalf of their clients. The items thus disallowed by the trial court, but now found to be proper charges by us, total the sum of $497.02.
 
 
 29
 Since we have held that an award of any less sum than those heretofore indicated we would deem to be clearly erroneous, the question now arises whether in reversing the judgment we should now remand the cause for further proceedings in the district court for determination of a proper award in the light of this opinion. The judge who heard the case before has now died and in our view this extended litigation should end now. As we suggested in Monaghan v. Hill, 9 Cir., 140 F.2d 31, 34, we have the power to fix the attorneys' fees at a reasonable figure and for the reasons just suggested we think we should exercise that power.[7]
 
 
 30
 Accordingly, the judgment is reversed and the cause remanded with directions to enter judgment for the plaintiffs and against the defendants for the sum of the unpaid contributions and the liquidated damages as fixed in the court below.
 
 
 31
 Said judgment shall include costs, expenses and attorneys' fees, as follows:
 
 
 32
 Costs in district court and court of appeals through the first appeal: $367.97;
 
 
 33
 Costs and expenses incident to the proceedings in the Supreme Court, $1,345.54;
 
 
 34
 Costs and expenses incurred in the court of appeals on the second appeal: $441.39;
 
 
 35
 Costs and expenses incurred in the district court on the last trial of this case and upon the present appeal to this court, to be ascertained and inserted by the court on this remand.
 
 
 36
 Attorneys' fees: $3300.
 
 
 37
 Interest shall be computed at the legal rate upon the items of unpaid contributions and liquidated damages from the date of the commencement of the action, and upon the several items of costs and expenses from the dates when the same were first incurred and expended, such additional costs and such interest to be computed by the trial court pursuant to this mandate.
 
 
 
 Notes:
 
 
 [1]
 This case was one of three companion cases, each tendering the same issues. By stipulation it was agreed that the three suits be considered as a unit in determining the allowable attorneys' fees, costs and expenses, and that the amount recovered for such items should be the total recoverable for all three suits
 
 
 [2]
 This sum is made up of the following items: Docket fee to the Supreme Court Clerk $100; additional docket fee, supervising fee, and handling and printing charges, $119.11; printing petition and briefs in the Supreme Court, $629.31
 
 
 [3]
 In this case the board, following the conclusion of the case in the Supreme Court, was billed for $9960, attorneys' fees and $1713.51, for costs and expenses, or a total of $11,673.51, which the board paid
 
 
 [4]
 The appellees' argument is stated in their brief as follows: "Plaintiffs' test of reasonableness is wrong on another count. They assert that they are entitled to all litigation expenses incurred by them, regardless of amount, so long as the charges are reasonable as between their attorneys and themselves. The law is, however, that the amount of attorneys' fees and expenses allowable to the successful litigant as damages is not necessarily the same as that payable by the client to the attorney, or recoverable by the attorney from the client."
 
 
 [5]
 Appellants assert that support is given to their theory in the case of Arenson v. National Automobile & Casualty Ins. Co., 48 Cal.2d 528, 310 P.2d 961. Appellees rely upon Cirimele v. Shinazy, 134 Cal. App.2d 50, 52, 285 P.2d 311, 52 A.L.R.2d 860. There seems to be little authority dealing directly with this particular difference between the parties. In Hutchinson v. Wm. C. Barry, Inc., (D.C.Mass.) 50 F.Supp. 292, 298, an action involving fees recoverable under the Fair Labor Standards Act, Judge Wyzanski, after discussing the problem, expressly applied the appellants' theory here and concluded: "I therefore determine the fee exactly as I would were the plaintiff sued by his counsel for a fee. Relevant and familiar criteria are set forth in the Twelfth Canon of the American Bar Association." Extensive annotations on the subject of the amount of attorneys' fees to be allowed by a court found in 143 A.L.R. 672, and in 56 A.L.R.2d 13, fail to deal with the problem presented by these theories of the parties in this case
 
 
 [6]
 The court in listing the basis for its award referred to "the importance of the question to all Oregon employees to whom the Fair Labor Standards Act may become a subject of litigation." That was a case in which the amount involved in the suit was substantially less than the amount of attorney's fees awarded. The double damages awarded were $427.38, and the attorney's fees, $750
 
 
 [7]
 In Arenson v. National Automobile & Casualty Ins. Co., supra, the Supreme Court of California, 310 P.2d at page 969, recognized that it had the power to appraise and adjudicate the value of attorneys' services in a case of this general character